JOHN CAMPBELL & others[1] *vs.* CITY COUNCIL OF LYNN & others[2]
(and a companion case[3]).

Nos. 90-P-192 & 90-P-1108.

Suffolk. April 12, 1991. - February 19, 1992.

Present: BROWN, PERRETTA, & PORADA, JJ.

Further appellate review granted, 412 Mass. 1103 (1992).

*Zoning,* Educational use, Special permit. *Education,* Zoning. *Statute,* Construction. *Words,* "Education."

Certain real property was exempt under G. L. c. 40A, § 3, from the zoning ordinance of Lynn, where the land and structures in question were to be leased by the Lynn Housing Authority and a nonprofit corporation, and used as a group residence with supportive services of an educational nature for fifteen elderly, mentally ill individuals. [154-156]

Nothing in G. L. c. 40A, § 3, required a municipality to impose regulations on certain real property otherwise exempt from use regulations under the zoning ordinance. [156-157]

The Lynn city council acted properly in issuing a special permit to the owners of a certain dwelling to use the premises as a group residence for fifteen elderly, mentally ill individuals, and properly considered the effects of granting the permit upon the neighborhood and the city. [157-158]

The findings of a city council in granting a special permit, the findings of a zoning board of appeals in upholding the issuance of a building permit, and the findings of the Superior Court and Land Court judges, respectively, on review of those decisions were all adequate to comply with the standards imposed by G. L. c. 40A and the applicable zoning ordinance. [158-159]

---

[1]Robert Doyle, Dorothy L. McWha, Anna T. O'Brien, Alice Rosales, Manuel Rosales, Lawrence Slepoy, John Surette, and Marion Surette, all of whom reside in close proximity to the locus.

[2]The other defendants in this action are Thomas C. Goff, Jr., and James P. Lyons, the owners of the subject premises.

[3]The companion case was brought in the Land Court by essentially the same plaintiffs (not including Alice and Manuel Rosales) against the Lynn zoning board of appeals and the owners Goff and Lyons. The cases were consolidated on appeal.

CIVIL ACTION commenced in the Superior Court Department on March 11, 1988.

The case was heard by *John T. Ronan*, J.

CIVIL ACTION commenced in the Land Court Department on September 27, 1988.

The case was heard by *Marilyn M. Sullivan*, J., on motions for summary judgment.

*George E. Richardson* for the plaintiffs.

*Michael J. Barry*, Assistant City Solicitor, for the defendants, submitted a brief.

BROWN, J. This is a nimby — not in my backyard — case. In February, 1988, the Lynn city council (city council) granted a special permit to the owners of a dwelling located at 12 Morris Street in Lynn to use the premises as a group residence for fifteen elderly, mentally ill individuals. The owners intend to lease the premises to Greater Lynn Senior Services (Senior Services), a nonprofit corporation that, together with the Department of Mental Health, is to provide on-site staffing and support services to the residents.[4] The Lynn Housing Authority is to provide rental subsidies to the residents and participate in screening individuals for placement.

The plaintiffs appealed from the decision of the city council to the Superior Court, which upheld the granting of the special permit and found that, pursuant to G. L. c. 40A, § 3, the intended use of the premises "is a use which could not be prohibited by a local zoning ordinance." In June, 1988, the owners were issued a building permit to begin repairs and alterations on the premises for the group home. The plaintiffs objected to the issuance of the building permit and appealed to the Lynn zoning board of appeals (board). Following a public hearing, the board upheld the issuance of the building permit. From this decision, the plaintiffs appealed to the Land Court. The Land Court judge, relying in part on the decision of the Superior Court, ruled that the premises were

---

[4]The services to be provided by Senior Services are in the nature of support and skill building services and activities of daily living such as money management, health education, cooking, and hygiene.

exempt from regulation because of their proposed educational use and, further, that, although certain zoning requirements may be imposed by the city of Lynn under G. L. c. 40A, § 3, the city of Lynn has not attempted to apply the general provisions of its zoning ordinance to this particular site and the site therefore is free from the provisions of the zoning ordinance. We find nothing in the record of these two proceedings that would cause us to reverse the judgment of either court.

On appeal, the plaintiffs argue that the premises are not exempt from the Lynn zoning ordinance. Chapter 40A, § 3, contains the successor to the so-called "Dover Amendment"[5] which, as inserted by St. 1975, c. 808, § 3, provides, in relevant part, that "[n]o zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for *educational purposes* on land owned or *leased by the commonwealth or any of its agencies, subdivisions or bodies politic* or by a religious sect or denomination, *or by a nonprofit educational corporation*; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements" (emphasis supplied). There can be no doubt that the property at issue in this case, if used as a group residence for elderly, mentally ill individuals, would come within the meaning of the term "educational purpose." "Education has long been recognized in the courts of this Commonwealth as a 'broad and comprehensive term.' " *Commissioner of Code Inspection of Worcester* v. *Worcester Dynamy, Inc.*, 11 Mass. App. Ct. 97, 99 (1980), and cases cited. That this facility will be residential or that it will serve elderly individuals does not deprive it of its educational character. See *Fitchburg Hous. Authy.* v.

---

[5]The Dover Amendment was enacted in response to attempts by municipalities to exclude certain sectarian educational uses in residential districts. See St. 1950, c. 325, § 1; *Attorney Gen.* v. *Dover*, 327 Mass. 601, 603 (1951). See also *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 27 n.10 (1979).

*Board of Zoning Appeals of Fitchburg*, 380 Mass. 869, 873 (1980); *Harbor Schools, Inc.* v. *Board of Appeals of Haverhill*, 5 Mass. App. Ct. 600, 605 (1977). Nor does it matter that the educational activities are somewhat outside of the realm of a traditional curriculum. "The proposed facility would fulfil a significant educational goal in preparing its residents to live by themselves outside the institutional setting. Instruction in the activities of daily living is neither trivial nor unnecessary to these persons. . . . Inculcating a basic understanding of how to cope with everyday problems and to maintain oneself in society is incontestably an educational process." *Fitchburg Hous. Authy.* v. *Board of Zoning Appeals of Fitchburg*, 380 Mass. at 875.

Even though the premises are to be used for an educational purpose, the plaintiffs argue that they are not exempt under § 3 because they are not "owned or leased by the commonwealth or any of its agencies, subdivisions or bodies politic," as required by the statute. To the contrary, the Superior Court judge determined that the Lynn Housing Authority would be the tenant of record, and that finding is not clearly erroneous (see Mass.R.Civ.P. 52[a], 365 Mass. 816 [1974]): the record demonstrates that both the Lynn Housing Authority and Senior Services will be signatories on the lease with the owners of the property. The Lynn Housing Authority's role under the lease is to provide financial assistance to the individual residents in the form of subsidy payments directly to the landlord, i.e., the Authority furnishes at least a significant portion of the rent. Senior Services, referred to as the "tenant" on the lease, will be responsible for the activities of the residents and for maintaining the premises and preventing damage to the property. Irrespective of labels, both the Authority and Senior Services perform obligations generally imposed on tenants under a lease, and the Authority will perform the primary obligation of paying rent.

The plaintiffs also overlook the language in G. L. c. 40A, § 3, which provides that property is exempt if owned or leased by a nonprofit educational corporation. *Gardner-Athol Area Mental Health Assn.* v. *Zoning Bd. of Appeals of*

*Gardner*, 401 Mass. 12 (1987), is instructive on this point: there, the Supreme Judicial Court noted that "[t]here is nothing in G. L. c. 40A, § 3, . . . that requires that education be the dominant purpose or primary activity of a nonprofit corporation in order that it may qualify as a nonprofit educational corporation under § 3. . . . The proper test in deciding whether a nonprofit corporation is an educational one is whether its articles of organization permit it to engage in educational activities . . . ." *Id.* at 15-16.

Senior Services is a nonprofit corporation organized pursuant to G. L. c. 180. The supportive services to be provided by that organization to the residents of the proposed facility are educational in nature and are permitted by its articles of incorporation.[6] Thus, we have no difficulty in concluding that the subject premises are exempt from regulation as an educational use.

The plaintiffs next argue that, if the *use* of the property cannot be regulated or prohibited, the property is still subject to regulations concerning bulk and height, yard sizes, lot area, parking, and other dimensional requirements. Merely because G. L. c. 40A, § 3, states that a city or town "may" subject exempt premises to "reasonable regulation," however, does not mean that the city or town is somehow compelled to do so. Simple rules of statutory construction lead to the obvious conclusion that, where statutes state "may" rather than "shall," the application of the statutory requirements is permissive rather than mandatory. "The distinction in statutes between 'shall,' a word of command, and 'may,' a word of permission, is not one which courts pass over lightly unless context or other provisions require it." *Salem Hosp.* v. *Rate*

---

[6]Senior Services' articles of incorporation state that its corporate purposes are "to provide supportive services to elderly residents of the Greater Lynn area . . . to enter into any kind of activity, and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the corporation . . . ." In addition to its articles of incorporation, the official mission statement of Senior Services states, in relevant part, that "[Senior Services] exists to provide, advocate for and ensure the provision of a complete and interwoven array of social services, health services, education and recreational programs for older people in our communities."

*Setting Commn.*, 26 Mass. App. Ct. 323, 325 (1988). "The word 'may' in a statute commonly imports discretion." *Turnpike Amusement Park, Inc.* v. *Licensing Commn. of Cambridge*, 343 Mass. 435, 437 (1962). "There is nothing in the general context of the statute or the purpose for which it was enacted that requires a different construction." *Id.* at 437-438. We find no error in the fact that the city council chose not to impose specific parking and dimensional restrictions on this site.[7]

We also think that the city council acted properly in issuing a special permit to the owners in this case and that the permit has the effect of relieving the owners of the property from compliance with the general dimensional and parking regulations of the Lynn zoning ordinance. Section 18 of the Lynn zoning ordinance requires the permission of the city council to allow a group residence in a business district. The ordinance also requires that no permit be approved without considering the effects upon the neighborhood and the city. Following public hearings on the issue, the city council issued its decision, concluding that "(a) [t]he proposed use will be safe and attractive for the area[,] (b) [n]o substantial burden

---

[7]A likely factor behind the city council's decision not to impose dimensional restrictions is that, while it is clear that a city or town may impose restrictions on certain aspects of property being used for educational or religious purposes, it is equally clear that a municipality may not nullify the use exemption of § 3 by imposing impossible requirements on particular premises. See *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486, 492 (1964) (applying dimensional requirements of single-family dwellings to a multi-purpose college building nullified the educational use of the property and was therefore invalid). "A municipality 'cannot achieve indirectly that which it is forbidden to achieve directly.'" *Newbury Jr. College* v. *Brookline*, 19 Mass. App. Ct. 197, 207 (1985), quoting from *Rogers* v. *Provincetown*, 384 Mass. 179, 182 (1981).

Cases which have dealt with this question have held that a municipality may require compliance with such provisions as off-street parking regulations (*Radcliffe College* v. *Cambridge*, 350 Mass. 613 [1966]), wetlands protection requirements (*Southern New England Conference Assn. of Seventh Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701 [1986]), and other bulk, dimensional, and parking requirements "not significantly interfering with" the use of the premises (*The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 30-31 [1979]). See also *Inspector of Bldgs. of Salem* v. *Salem State College*, 28 Mass. App. Ct. 92, 96 (1989).

will be placed upon the city for services[,] (c) [n]o detrimental impact on the [c]ity or the neighborhood can be envisioned [, and] (d) the proposed use will not derogate from the intent and purpose of the [z]oning [o]rdinance of the [c]ity of Lynn, but will enhance it." The city council also attached certain conditions to the issuance of the permit, which it is authorized to do under § 18(c) of the ordinance.[8] Thus, nothwithstanding the plaintiffs' arguments to the contrary, the city council did take into account the effects of this use on the neighborhood.

Remaining issues raised by the plaintiffs,[9] which we address only briefly, concern the adequacy of the findings of the city council in granting the special permit and the findings of the Superior Court in upholding the grant of the special permit. In granting the special permit for the use of the premises, the city council was required to consider the effects on the neighborhood and, because this is a prior nonconforming use, to make a finding that the proposed use would not be "substantially more detrimental" to the neighborhood than the prior use. See *Howland* v. *Board of Appeals of Plymouth*, 13 Mass. App. Ct. 520, 521 (1982). While the decisions of the city council, the board, and the lower courts may not contain the degree of specificity desired by the plaintiffs, they nevertheless comply with the standards imposed by G. L. c. 40A and the zoning ordinance.[10] Contrast *Pierce* v.

---

[8]The conditions were (1) that the residence be for Lynn residents only, (2) that forty percent of the fifteen units be reserved for West Lynn residents, (3) that the city council's committee on housing review the property in one year, and (4) that an off-street parking plan be developed.

[9]Given our ruling that the application of dimensional and parking requirements was permissive rather than mandatory, we find it unnecessary to address many of the issues raised by the plaintiffs in the Land Court case.

[10]The Superior Court judge found, regarding compliance with the standards imposed by the ordinance and G. L. c. 40A, that "the proposed use would in no way derogate from the intent or purpose of the zoning ordinance." He also found that there was no detrimental impact upon the neighborhood, no problem of density, no problem of parking, and that "the proposed use is perfectly consistent with the present use and tenor of the neighborhood all as more fully appears from the photographic [e]xhibits . . . ."

*Board of Appeals of Carver*, 2 Mass. App. Ct. 5, 6 (1974) (failure of board and lower court to find that mobile home park would not be detrimental to the character of the town required reversal). In this case, the city council, the board, and the lower courts "avoided the common vice of parroting of the statutory standards for a grant of a special permit in lieu of findings." *Tebo* v. *Board of Appeals of Shrewsbury*, 22 Mass. App. Ct. 618, 622 (1986).

*Judgments affirmed.*