JOHN CAMPBELL & others[1] *vs.* CITY COUNCIL OF LYNN & others[2] (and a companion case[3]).

Essex. Suffolk. September 14, 1992. - July 9, 1993.

Present: LIACOS. C J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ

*Zoning*, Educational use, Parking, Validity, Special permit. *Education*, Zoning. *Statute*, Construction. *Words*, "Education."

The Lynn city council correctly issued a special permit under G. L. c. 40A, § 9, and § 18 of the local zoning ordinance, to operate a group residence located in a business zone. [775-776]

Use of certain premises as a group residence for elderly mentally ill persons is a protected use for an educational purpose within the meaning of the Dover Amendment, G. L. c. 40A, § 3, second par., as inserted by St. 1975, c. 808, § 3. [776]

Zoning officials, on an appropriate showing, may lawfully grant a building permit to further the use of premises for an educational purpose where application of facially reasonable zoning requirements concerning bulk and dimension would nullify the protection granted to the use under the Dover Amendment (G. L. c. 40A, § 3, second par.) or would significantly impede an educational use, without advancing the municipal goals embodied in the zoning law. [776-778] O'CONNOR, J. dissenting.

In an action seeking review of the grant of a building permit to make alterations to certain premises protected by the provisions of G. L. c. 40A, § 3, second par., the record was clear that the premises could not be made to conform to any applicable zoning requirements with respect to bulk or dimension and that application of those requirements would effectively deny the use of the premises for any conceivable educational purpose without promoting the valid goals of the municipal zoning regulation; in such circumstances, the zoning officials were justified in concluding that the zoning ordinance could not reasonably be

---

[1]Nine other residents of Lynn who live near the premises.

[2]Thomas C. Goff, Jr., and James P. Lyons, the owners of the premises.

[3]The companion case was brought in the Land Court by eight of the plaintiffs in the Superior Court action against the Lynn zoning board of appeals and the owners, Goff and Lyons. The cases were consolidated on appeal. In discussing the trial court actions, we refer to the neighbors as plaintiffs without differentiating one group of plaintiffs from the other.

applied to such an educational use and in granting the permit. [778-779] WILKINS, J., dissenting, with whom LYNCH, J., joined. O'CONNOR, J., dissenting.

In an action challenging the grant of a special permit, the record did not disclose whether zoning requirements for off-street parking could be reasonably applied to certain premises the use of which was protected by the Dover Amendment, G. L. c. 40A, § 3, second par., and the matter was remanded for consideration of that issue. [780] WILKINS, J., concurring, with whom LYNCH, J., joined.

CIVIL ACTION commenced in the Superior Court Department on March 11, 1988.

The case was heard by *John T. Ronan*, J.

CIVIL ACTION commenced in the Land Court Department on September 27, 1988.

The case was heard by *Marilyn M. Sullivan*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*George E. Richardson* for the plaintiffs.

*Michael J. Barry*, City Solicitor, for the City Council of Lynn & another, submitted a brief.

GREANEY, J. This case concerns the use of land and a building at 12 Morris Street in Lynn (premises), as a group residence for fifteen elderly, mentally ill persons. The premises are located in a business zone which does not allow a group residence as of right. The Lynn city council (council) granted a special permit under § 18 of the Lynn zoning ordinance (ordinance) authorizing the premises to be used as a group residence, and the Lynn zoning board of appeals (board) rejected an appeal by the plaintiffs which sought to revoke the building permit issued by the building commissioner for alterations to the premises. These decisions were challenged by the plaintiffs in separate actions in the Superior Court (special permit), and Land Court (building permit). Judgments were entered in those actions upholding the respective decisions of the council and the board. The Appeals Court affirmed both judgments, concluding that: (1)

the proposed use of the premises was lawful because of the special permit and the fact that the group residence constituted a use for an educational purpose protected by G. L. c. 40A, § 3, (1990 ed.); (2) that statute conferred on the Lynn zoning officials discretion not to apply any provisions of the ordinance concerning bulk, dimensional and parking requirements that might otherwise pertain to the premises; and (3) adequate findings had been made under G. L. c. 40A, and the ordinance, to support the various decisions under review. See 32 Mass. App. Ct. 152 (1992). We granted further appellate review only to examine the issues connected to the second point. We conclude that the bulk and dimensional requirements cannot be applied to the premises. We also conclude that the matter of off-street parking should be reconsidered by the board.

The premises include a three-story, twenty-seven room building on a 3,947 square foot parcel of land situated in a business zone which allows residential uses by special permit. Next to the premises is a lot containing a house which is used as a single family residence. The premises had been used as a convent housing nuns. When the convent ceased operations, the premises were acquired by the defendants Thomas B. Goff, Jr., and James P. Lyons (owners), who proposed to use the premises for the group residence previously described. The premises would be leased to the Greater Lynn Senior Services, a nonprofit corporation which, together with the Department of Mental Health, would provide staffing and support services to the residents.

With this use in mind, the owners applied to the council and received a special permit to operate a group residence in a business zone. The permit was subject to the conditions noted below.[4] The plaintiffs commenced an action in the Superior Court contending that the council had exceeded its authority in granting the special permit and asking that it be

---

[4]The conditions were (1) that the residence be for Lynn residents only, (2) that forty per cent of the fifteen units be reserved for West Lynn residents, (3) that the city council's committee on housing review the property in one year, and (4) that an off-street parking plan be developed.

annulled. After trial, a judge of the Superior Court upheld the grant of the special permit and also concluded that, because the premises were to be used for an educational purpose, they were "exclude[d] from local control" under G. L. c. 40A, § 3, second par.

Subsequently, the owners obtained a building permit from the Lynn building commissioner to make alterations to the premises. The plaintiffs next sought to have the commissioner revoke the building permit, claiming, among other things, that the premises were not in compliance with certain general bulk, dimensional and parking requirements of the ordinance. The commissioner refused relief, and his decision was upheld by the board. The plaintiffs thereafter filed a complaint in the Land Court seeking to have the board's decision annulled. A record was prepared, and cross-motions for summary judgment were filed. A judge of the Land Court determined that there were no material issues of fact in dispute and allowed the motions of the board and the owners for summary judgment. Judgment entered dismissing the plaintiffs' appeal of the board's decision. As has been indicated, the judgments of the Superior and Land Courts were affirmed by the Appeals Court.

1. The special permit granted by the city council did not have the effect of relieving the owners from compliance with the general bulk, dimensional and parking requirements of the ordinance. It appears that the special permit may have been sought, and obtained, before it occurred to anyone that the group residence might constitute a use for an educational purpose protected under G. L. c. 40A, § 3, second par.[5] The permit was granted pursuant to the provisions in G. L. c. 40A, § 9, and § 18 of the ordinance, to authorize a *use* which required special permission from the council before it could be maintained in a business zone. The special permit could not effectively resolve compliance with other require-

---

[5]As a general rule, a municipality cannot condition the use of property for an educational purpose on the grant of a special permit. See *Trustees of Tufts College* v. *Medford, ante* at 753, 755 n.3 (1993); *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 32-34 (1979).

ments of the ordinance. See *SMI Investors (Delaware), Inc.* v. *Planning Bd. of Tisbury*, 18 Mass. App. Ct. 408, 413-414 (1984).

2. General Laws c. 40A, § 3, second par., as inserted by St. 1975, c. 808, § 3 (generally referred to as the Dover Amendment), provides, in part, as follows:

> "No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes or for educational purposes on land owned or leased by the commonwealth or any of its agencies, subdivisions or bodies politic . . . provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements."

The Appeals Court's affirmance of the Superior Court judgment, see 32 Mass. App. Ct. at 153-155, and our limitation of the issues to be considered by this court, establish that the use of the premises as a group residence for elderly, mentally ill persons is a protected use for an educational purpose within the meaning of § 3 above. The Superior Court did not address the question of the application of any of the ordinance's general bulk, dimensional and parking requirements to the premises. That question was taken up in the Land Court. In the order granting the motions for summary judgment of the board and the owners, the Land Court judge noted that the Lynn zoning officials (the building commissioner and board) had not "attempted to apply the general [bulk, dimensional, and parking] provisions of the ordinance to the site." The judge reviewed the case law interpreting the Dover Amendment, and, based on the cases and the language of the statute, stated that "[i]t is clear from [§ 3] that . . . application [of general regulations] is permissive at best and suspect at worst." The judge then ruled that "the site is free from the provisions of the [z]oning [o]rdinance." The judge

appears to have reasoned that the zoning officials could law-
fully grant a building permit to further the use of the prem-
ises for an educational purpose, despite the fact that the
premises did not comply with general bulk, dimensional, and
parking requirements, where application of those require-
ments would prevent the use and impermissibly nullify the
protection granted to it by G. L. c. 40A, § 3, second par. We
conclude that the judge's decision was correct with respect to
the bulk and dimensional requirements of the ordinance,[6] but

---

[6]The problem in this case arises principally from the fact that the prem-
ises are nonconforming. Because a large twenty-seven room structure occu-
pies a small (3,947 square foot) lot, the premises cannot be made to com-
ply with bulk and dimensional requirements. This fact holds true no
matter what use is made of the existing structure. In view of the noncon-
forming nature of the premises, the problems in the case might have been
more easily resolved under G. L. c. 40A, § 6 (1990 ed.). That statute
excuses an unaltered nonconforming structure (a structure in existence
prior to enactment of a local zoning law) from compliance with the law.
The owners sought a building permit to make certain changes to the prem-
ises, including changing doors and windows, enlarging closets and adding
an elevator. No inquiry was made as to whether these changes were suffi-
cient to take the premises outside of the protection granted by § 6 to a
nonconforming structure. See *Crawford* v. *Building Inspector of Barnst-
able*, 356 Mass. 174, 176-178 (1969) (enclosing outside porch was minor
alteration that could be made as of right to nonconforming structure; de-
cided under prior G. L. c. 40A, § 5).

Section 6 also allows changes, extensions, and structural alterations to a
prior nonconforming structure or use in certain defined circumstances with
the approval of local zoning officials. Local officials could not deny the
owners the right to use the premises for educational purposes. If the pro-
posed alterations could not be made as of right under § 6, the owners
could nonetheless seek the requisite determination by zoning officials that
the proposed alterations to the structure should be permitted because the
result would not be substantially more detrimental to the neighborhood
than the existing nonconforming structure. See *Willard* v. *Board of Ap-
peals of Orleans*, 25 Mass. App. Ct. 15, 20-21 (1987).

We understand Justice O'Connor to maintain in his dissent, *post*, that
the owners must obtain the building permit necessary for their plans by
proceeding under G. L. c. 40A, § 6, because, in his view, G. L. c. 40A,
§ 3, cannot be read to exempt the structure from the relevant dimensional
and parking requirements. We disagree with this contention. This case was
decided in the Land Court solely on the basis of G. L. c. 40A, § 3, second
par., without reference to the possible application of § 6, and the record is
not sufficient to permit resolution of the case under § 6. We conclude that
the owners are entitled to a measure of relief based on § 3. There is there-

that the record lacks sufficient information to decide the applicability of the parking requirements.

The Appeals Court, in upholding the decision of the Land Court, reasoned that the word "may" in the proviso to G. L. c. 40A, § 3, second par., conferred absolute discretion on the zoning officials to disregard general requirements of the ordinance that would normally apply to the premises. 32 Mass. App. Ct. at 156-157. This conclusion is wrong because the law does not go this far. Local zoning requirements are meant to be applied uniformly, *Trustees of Tufts College* v. *Medford, ante* 753 (1993), and consequently, local officials may not grant blanket exemptions from the requirements to protected uses. The officials may, however, on an appropriate showing, decide that facially reasonable zoning requirements concerning bulk and dimension cannot be applied to an educational use occupying a particular site because application of the requirements would improperly nullify the protection granted to the use, or because compliance with the requirements would significantly impede an educational use, in either instance without appreciably advancing municipal goals embodied in the local zoning law.[7] *Id.* at 757-761. This, in substance, was the basis of the decision by the Lynn zoning officials when they granted the building permit requested by the owners.

If a decision like the one made here is challenged by abuttors or neighbors, in the position of the plaintiffs, a judge must decide whether the action taken by the local zoning officials was justified under G. L. c. 40A, § 3, second par. This

---

fore no reason to require them to recommence proceedings under § 6, and to suffer the delays and costs that would be associated with such a course.

[7]The plaintiffs have suggested that the owners' sole recourse in this case is to seek a variance for use of the building. Variances may only be granted in limited circumstances specified by G. L. c. 40A, § 10 (1990 ed.), having to do with the soil conditions, shape or topography of the locus. See *Guiragossian* v. *Board of Appeals of Watertown,* 21 Mass. App. Ct. 111, 115 (1985). In *Trustees of Tufts College* v. *Medford, supra* at 760, we rejected a contention that an educational use claiming an inability to comply with a local zoning law must obtain a variance to proceed with its proposed project.

will often be a fact-based inquiry. *Trustees of Tufts College* v. *Medford, supra* at 759-760. In this case, however, the facts with respect to the bulk and dimensional requirements are undisputed. In connection with their motion for summary judgment in the Land Court, the plaintiffs filed an affidavit simply alleging that the premises do not comply with the various requirements of the ordinance.[8] It is clear from the plaintiffs' affidavit, and from the record, that the premises cannot be made to conform to any applicable bulk or dimensional requirements because the building occupies most of a small (3,947 square foot) lot. This conclusion makes it evident that, apart from the difficulty of analogizing the proposed use to any use regulated in the ordinance, see note 8 *supra*, the application of the bulk and dimensional requirements referred to by the plaintiffs, in the manner urged by them, would effectively deny the use of the premises for any conceivable educational purpose with no valid goal of municipal zoning regulation being served thereby. Further, contrary to the plaintiffs' position, the owners cannot be compelled to seek a variance in order to have their educational use. See note 7 *supra*. We therefore agree with the Land Court judge that the case presents a situation where local zoning officials correctly decided that the general bulk and dimensional requirements of the ordinance could not be properly applied because their application would contradict the protection granted by G. L. c. 40A, § 3, second par., to an educational use.[9]

---

[8]In taking this position, the plaintiffs have some difficulty in classifying the group residence for the purpose of determining which requirements in the ordinance might apply. The plaintiffs, at various points, have referred to the requirements concerning apartment houses, elderly housing projects, hospitals, nursing homes and convalescent homes as possibly applicable to the premises. The group residence cannot be classified as any of these.

[9]Our decision does not imply that any nonconforming structure for which an educational use is proposed will necessarily be free from the bulk and dimensional requirements of a local zoning law. "[T]he question of the reasonableness of a local zoning requirement, as applied to a proposed educational use, will depend on the particular facts of each case . . . [and] an educational [use challenging such requirements] will bear the burden of proving that the local requirements are unreasonable as applied to its pro-

The situation may be different with respect to the ordinance's off-street parking requirements. The ordinance appears to require that the premises have a minimum number of off-street parking spaces that conform to certain design standards. The record does not disclose whether the requirements can be met. (In connection with this aspect of the case, it will be recalled that the council required in the special use permit that the owners develop an off-street parking plan. See note 4, *supra*.) In the materials before the Land Court judge, Lynn zoning officials have taken no clear position regarding the off-street parking issue. Adequate off-street parking, of course, can be a valid concern to municipalities, and it is a matter of regulation authorized by the proviso to § 3, second par. See *Radcliffe College* v. *Cambridge*, 350 Mass. 613, 617-618 (1966). We conclude that the record is insufficient to determine whether compliance with any applicable off-street parking requirements can be demanded. Accordingly, the question of off-street parking must be reexamined in light of the principles expressed in *Trustees of Tufts College* v. *Medford, supra*, and this opinion.

3. *Disposition.* The judgment in the Superior Court is affirmed. The judgment in the Land Court is vacated. The rulings in the Land Court that the bulk and dimensional requirements of the ordinance cannot be applied to the premises are affirmed. The case is to be remanded by the Land Court to the board which is to consider the applicability to the premises of any off-street parking requirements in

---

posed project." *Trustees of Tufts College* v. *Medford, supra* at 759. Local zoning officials properly could refuse a building permit for alterations to a nonconforming structure where, for example, the failure to meet local zoning requirements raised safety concerns.

One other observation, in response to Justice O'Connor's dissent, is appropriate. It is unlikely that an educational user proposing to build a new structure on a single small lot could argue successfully that dimensional, coverage and parking requirements would be unreasonable as applied to the property. As Justice Wilkins suggests, see *post* at 782, in these circumstances, local officials might be warranted in requiring that an educational user seek an alternative site.

the ordinance. The Land Court is to retain jurisdiction after that matter is considered by the board for the entry of a new judgment consistent with this opinion.

*So ordered.*

WILKINS, J. (dissenting in part, with whom Lynch, J., joins). In joining in the court's opinion in *Trustees of Tufts College* v. *Medford, ante* 753 (1993), I have agreed that a user of property for educational purposes may do so in contravention of an area, setback, parking, or similar local zoning requirement only if it proves that the local zoning regulation is unreasonable in its specific application to the proposed use. Thus I applaud the court's decision to send the matter of off-street parking back for a determination whether it would be unreasonable to require the educational user to adhere to off-street parking requirements. The failure of the court to do the same as to the Lynn ordinance's bulk and dimensional requirements is an unfortunate inconsistency.[1]

Despite the court's assertion that the local zoning officials have already decided in substance that application of the bulk and dimension requirements is unreasonable (*Campbell* v. *City Council of Lynn, ante* at 778), they have done no

---

[1]The court seems to endorse the idea that a municipal permit grantor, without a hearing and without any written findings of fact, could grant a building permit to use or erect a structure in violation of the provisions of a local zoning regulation by simply concluding that application of the local zoning regulation to a proposed educational use was unreasonable. I think, on the contrary, that a local official should have no such authority and should deny such a permit application, thereby requiring the applicant to seek relief from the local board of appeals or to commence an action under G. L. c. 240, § 14A (1990 ed.), as Tufts College did in the related case decided today.

This case is relatively rare in the courts' experience with G. L. c. 40A, § 3 (1990 ed.). It does not concern land already owned by a religious or educational entity that wants to use it in a way inconsistent with local zoning requirements. It concerns a proposed new use by a tenant educational user on premises not owned or to be owned by an educational entity.

such thing.[2] The test of reasonableness in this situation requires attention to factors not yet considered by any fact finder. Setback requirements and limits on the bulk of a structure on a lot have valid and reasonable municipal purposes. There is no demonstration in this case that the educational lessee could not reasonably find some conforming premises in Lynn for its purposes. If there are other premises reasonably available, it would be consistent with the object of § 3 to apply the Lynn bulk and dimensional requirements to the premises. The court's view that it is obvious that, as applied in this case, the bulk and dimensional requirements are unreasonable on their face ignores the balancing of interests that the *Tufts College* case calls for.

If, as the court strives to explain in note 9, *ante* at 779, the rule it adopts does not grant a roving license to protected religious and educational users to ignore bulk and dimension requirements, that right to rove is hedged by the necessity of determining reasonableness "on the particular facts of each case." *Id.*, citing *Trustees of Tufts College* v. *Medford, supra.* The particular facts in this case are that the protected user is only a prospective lessee, that there has been no fact determination whether "local zoning requirements raised safety concerns" (*Campbell* v. *City Council of Lynn, supra* at 779), that there has been no attention given to alternate sites, and that the need to rely on § 3 may be obviated by the fact that the proposed use may not even be a change in the nonconforming use (*id.* at 777 n.6).

The court rightly perceives that Lynn's off-street parking requirements have not been subject to appropriate analysis

---

[2]The findings of fact of the Lynn zoning board of appeals consist of one sentence that rejects the challenge to the building permit on the basis that a Superior Court judge "has held that the subject premises enjoys the exemption set forth in [G. L. c. 40A, § 3] because of its educational purposes." The words "reasonable" and "unreasonable" are not mentioned.

The Land Court's order allowing summary judgment was not based on a determination that there was no dispute of material fact on the unreasonableness of the bulk and dimension requirements, an issue on which the landowner had the burden of proof.

on the particular facts of this case. The same analysis is needed of the bulk and dimensional requirements.


O'CONNOR, J. (dissenting). A Land Court judge affirmed a decision of the Lynn zoning board of appeals which upheld the issuance of a building permit authorizing the defendant owners to "make certain changes to the premises, including changing doors and windows, enlarging closets and adding an elevator." *Ante* at 777 n.6. The only issue on appeal is whether the judge was right. Unlike the court, I believe that the judge erred.

It is clear, and no one contends otherwise, that the premises enjoyed nonconforming status. General Laws c. 40A, § 6 (1990 ed.), provides in relevant part that "[p]re-existing nonconforming structures . . . may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority [here the Lynn zoning board of appeals] . . . that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use[1] to the neighborhood." There has been no finding by the Lynn zoning board of appeals that the changes the owners wish to make to the structure "shall not be substantially more detrimental than the existing nonconforming [structure] to the neighborhood." Therefore, the issuance of the building permit should not have been upheld. Because such a finding is a prerequisite to the grant of a building permit, the case should be remanded by the Land Court to the Lynn zoning board of appeals for the board to consider whether such a finding is

---

[1]The concluding portion of the quoted provision must be read as follows: "shall not be substantially more detrimental than the existing nonconforming *structure* or use to the neighborhood" (emphasis added). *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 21 (1987). This statute presents "one of those rare instances in which a court must overcome its reluctance to supply a word or words which were not employed by the Legislature (see, e.g., *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 479 [1986]) in order to render a statute intelligible and so effectuate its obvious intent." *Id.*

appropriate. The question to be considered is not concerned with the use of the premises but only with whether the structure with the proposed physical changes will be substantially more detrimental to the neighborhood than the structure in its present condition. *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 22-23 (1987). [2]

The court states, *ante* at 777 n.6, that "[t]his case was decided in the Land Court solely on the basis of G. L. c. 40A, § 3, second par., without reference to the possible application of [G. L. c. 40A,] § 6," and therefore the court confines its inquiry to the issues under G. L. c. 40A, § 3, second par. According to the Land Court judge's memorandum of decision, the plaintiffs argued in that court that a finding under G. L. c. 40A, § 6, is required. The plaintiffs have made the same argument on appeal and, in my view, they are correct and the case should be decided on that basis.

Confining its inquiry to the issues under G. L. c. 40A, § 3, the court states that local officials may, "on an appropriate showing, decide that facially reasonable zoning requirements concerning bulk and dimension cannot be applied to an educational use occupying a particular site because application of the requirements would improperly nullify the protection granted to the use, or because compliance with the requirements would significantly impede an educational use, in either instance without appreciably advancing municipal goals embodied in the local zoning law." *Ante* at 778. The court states that, when the decision of the local authorities is challenged, "a judge must decide whether the action taken by the local zoning officials was justified under G. L. c. 40A, § 3, second par. This will often be a fact-based inquiry. *Trustees of Tufts College* v. *Medford*, [*ante* at 778-779]." For the several reasons I expressed in my separate opinion in the *Tufts* case, I do not agree that judges are empowered by G. L. c. 40A to declare that zoning regulations, which are

---

[2]If the proposed changes are limited to windows, doors, and the interior of the structure, it is difficult to see how they would be more detrimental to the neighborhood than the structure in its present state. *Ante* at 777 n.6.

reasonable on their face and would apply to a particular parcel of land or structure if the land or structure were devoted to a use not protected by G. L. c. 40A, § 3, are not equally applicable in a case in which their application would diminish or impede or prevent a "protected" use. One might reasonably wonder what is the source of a judge's or appellate court's authority to rule that, even though c. 40A, § 3, provides that a municipality may adopt reasonable zoning regulations and land or structures devoted to protected uses shall be subject to them, particular land or structures, in given circumstances, shall not be subject to them.

Nothing in G. L. c. 40A, § 3, suggests that, if the small lot involved in this case had not had nonconforming status, a religious or educational institution, with judicial approval, could have purchased the lot and totally covered it with a church or school on the ground that such lot coverage is essential to the protected use. Yes, churches and schools are protected uses, but the court misunderstands the degree of protection the statute provides. By the express terms of the statute, the protection is limited by its being subject to reasonable regulations. A municipality may not discriminate against such uses, but it need not discriminate in favor of them. According to the plain language of G. L. c. 40A, § 3, a municipality may not exclude protected uses from its jurisdiction, but it may adopt reasonable dimensional-type zoning regulations to which protected and unprotected uses alike shall be subject.

Of course it is true, as the court states at the conclusion of its footnote 6, *ante* at 777, that since the court has "conclude[d] that the owners are entitled to a measure of relief based on § 3 . . . [t]here is . . . no reason to require them to recommence proceedings under § 6. . . ." The court, however, should not have concluded that the owners are exempt under § 3 from the requirements of the Lynn zoning ordinance, which are nondiscriminatory and rationally related to the lawful purposes of zoning regulations enumerated in St. 1975, c. 808, § 2A. The court should hold that the owners are exempt from those requirements only if they

can meet the conditions set forth in G. L. c. 40A, § 6, relative to nonconforming structures.