GARY WATROS & another[1] vs. GREATER LYNN MENTAL
HEALTH AND RETARDATION ASSOCIATION, INC., & others.[2]

No. 92-P-1406.

Middlesex. February 17, 1994. - November 22, 1994.

Present: ARMSTRONG, PERRETTA, & LAURENCE, JJ.

Further appellate review granted, 419 Mass. 1105 (1995).

Zoning, Educational use, Special permit, Appeal, Person aggrieved. Prac-
tice, Civil, Summary judgment, Zoning appeal, Standing, Parties. Edu-
cation, Zoning.

A Superior Court judge incorrectly failed to address the jurisdictional is-
sue of the plaintiffs' standing as aggrieved parties under G. L. c. 40A,
§ 17, to challenge a board of appeal's grant of a special permit; on the
basis of the undisputed record, the judge should have ordered summary
judgment in favor of the defendants, where the plaintiffs did not set
forth specific facts to establish their standing. [661-667]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 17, 1992.

Motions to dismiss and for summary judgment were heard
by *Katherine Liacos Izzo*, J.

*Samuel A. Vitali* for Greater Lynn Mental Health and
Retardation Association, Inc.

*Frank J. Frisoli, Jr.*, for the plaintiffs.

*Scott Harshbarger*, Attorney General, *Donna L.
Palermino & Stanley J. Eichner*, Assistant Attorneys Gen-
eral, for the Commonwealth, amicus curiae, submitted a
brief.

LAURENCE, J. Emanuel and Barbara Miliaras own prop-
erty in Winchester at 12-14 Mount Pleasant Street, in a
neighborhood zoned for single-family dwellings. On the

[1]Roberta Watros.

[2]Winchester board of appeal, and Emanuel S. and Barbara A. Miliaras.

Miliarases' parcel sits a two-family house and near the rear lot line is a barn, or carriage house, that has been used exclusively for storage since 1962. The use of the house as a two-family residence is a nonconforming use under the Winchester zoning by-law, and the barn constitutes a nonconforming structure because it fails to meet the by-law's minimum setback requirement.

In July, 1991, the Miliarases leased the barn to the Greater Lynn Mental Health and Retardation Association, Inc. (GLMHRA), a private, nonprofit corporation established under G. L. c. 180, which engages in educational activities, for a five-year term at a nominal rent. GLMHRA planned to renovate the barn for use as a group home for three mentally retarded autistic men.[3] As at similar group houses that GLMHRA has implemented elsewhere, the Winchester residents would attend day programs, receive instruction in cooking, personal hygiene and household tasks, and be provided with occupational, speech and physical therapy by GLMHRA staff and assistants.

GLMHRA petitioned the Winchester board of appeal for a special permit to use the barn as a group home, as required by § 3.45 of the zoning by-law. After appropriate notice and a public hearing, attended by numerous abutters, neighbors, and concerned citizens who spoke with respect to the petition, the board granted the special permit in early January, 1992. In its written decision, the board acknowledged that G. L. c. 40A, § 3 (the so-called "Dover amendment," inserted by St. 1975, c. 808, § 3), entitled GLMHRA to use the barn as of right for the conceded educational purpose of a group home but concluded that a special permit was nonetheless required because of the proposed change in the nonconforming structure. Cf. *Campbell* v. *City Council of Lynn*, 415 Mass. 772, 777 n.6 (1993). The board recognized that, in order to grant the permit, it had to find, pursuant to § 3.45, that the change in the nonconforming structure (the

---

[3]One of the original three residents was to have been the Miliarases' son. That individual, however, appears to have died sometime prior to the commencement of this litigation.

barn) must "be equally or more appropriate to the neighborhood than the existing nonconforming structure." The board also noted that § 8.5 of the by-law authorized the board "to grant a special permit only where such conditions and safeguards as required by this By-law have been met and only after a determination that such grant would comply with all other provisions of this By-law and would not adversely affect the public health, safety, welfare, comfort, or convenience of the community."

The board ultimately made all of these required by-law determinations in GLMHRA's favor. In granting the special permit, the board particularly relied on its findings that satisfactory arrangements had been made by GLMHRA for ingress to and egress from the property and the proposed structure, off-street parking, refuse collection and disposal, screening and buffering, signage, and open space; that the number of vehicles allowed to park on site would not increase from the previous limit of nine; and that there was general compatibility of the project with adjacent properties and other property in the district, particularly because the neighborhood already contained numerous similar barns or carriage houses and many nonconforming structures. Additionally, the board found, in support of the permit, that the proposed barn renovations would not alter the "footprint" of the structure; that there would be no external alterations to the building except for new stairs on the front and side; that only limited site work was to be done, including construction of a retaining wall and stone rip-rap on two sides of an existing parking area, erection of a six-foot high fence along the rear and side lot lines, planting of six ten-foot evergreen trees along the rear lot line to screen the building and the parking area, and some walkways on the front and side of the building; that the parking area would remain unpaved; that there would be no external dumpster; no signs would be posted; and that no town officers or boards had commented adversely on the project.

The board attached conditions to the permit, as authorized under G. L. c. 40A, § 3, the most significant being that no

more than three persons could reside in the group home at any time; no more than the current nine lawful parking spaces could be used; and the barn could be used only as a group home and only so long as GLMHRA operated the facility as a nonprofit organization under license by the Department of Mental Health.

The Watroses, alleging ownership of property at 10 Mount Pleasant Street that abutted the Miliarases' lot, appealed the board's decision by unverified complaint against the Miliarases, the board, and GLMHRA, filed in the Superior Court pursuant to G. L. c. 40A, § 17, in mid-January, 1992.[4] The Watroses challenged the decision on the grounds that no executed lease was in existence when it was rendered; that it violated the zoning by-law by effectively dividing the Miliaras lot into two distinct properties used for two different purposes; that it adversely affected "the comfort and convenience of the community" because "the new use is clearly more intensive than the prior use"[5] and because it was "proximately located" to other dwellings; that the new use was inappropriate to the neighborhood; and that it permitted an increase in on-site parking beyond the nine previously allowed.

Timely answers of the defendants denied all of the complaint's operative averments. Additionally, GLMHRA's answer denied the Watroses' standing and asserted as an affirmative defense that the Watroses were not persons aggrieved with sufficient standing to give the court jurisdiction over the complaint. On June 10, 1992, the board, stating that no genuine issue existed as to any material fact, moved for summary judgment on the basis of the pleadings, affidavits, the board's special permit decision, all documents and

[4]The Watroses did not allege any facts particularizing their abutting status, such as their proximity to the rear lot line; or their ability to see the barn or the parking area or the two-family residence or anything else on the Miliaras lot; or their susceptibility to noise from the premises; or the impact on them of vehicular traffic in and out of the Miliaras property; or the likely effect on them of any spill-over off-site parking.

[5]The Watroses erroneously asserted that the decision authorized residence by "a minimum of four adults." See above and note 8 below.

exhibits received in connection with that decision (including the zoning by-law), and "other discovery developed during the course of this litigation." The Watroses swiftly responded with a cross motion for summary judgment, which agreed that "there is no dispute as to any material fact" but construed those facts as requiring the "court to determine as a matter of law that the plaintiffs are entitled to judgment on the merits of their appeal." A few days later, GLMHRA filed its "support of [the board's] motion for summary judgment and opposition to [the] plaintiffs' cross motion for summary judgment."

Almost a week later, GLMHRA also filed a "motion to dismiss" the action "for lack of jurisdiction" and failure of the complaint "to meet the [standing] requirements of [G. L. c. 40A, § 17]." In support of the motion, GLMHRA relied upon "the record of [the] proceedings and pleadings herein." After a consolidated hearing on all of the outstanding motions on June 22, 1992, at which the judge acknowledged that "the material facts are undisputed" and only issues of law remained, the motion judge denied GLMHRA's "motion to dismiss" and the defense motions for summary judgment and allowed the Watroses' cross motion for summary judgment on the ground that the board had exceeded its authority in granting the special permit. GLMHRA has appealed on the ground, among others, that the judge erroneously decided the issue of the Watroses' standing.

We agree.[6] We need not expatiate upon the substantive issues presented on appeal, dealing with the relationship between G. L. c. 40A, §§ 3 and 6, and zoning regulations and the permissible scope of nonconforming uses under the special permit. The judge should have addressed the jurisdictional issue of the Watroses' standing on the entire record

---

[6]We do so, with respect to the issue of standing under G. L. c. 40A, § 17, on grounds different from that argued by GLMHRA but squarely presented by both the record before the motion judge and that same record before this court. See Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974); *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981); *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 11 (1989); *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984).

before her and should have entered judgment in favor of the defendants because the Watroses did not sustain their burden of establishing their standing as aggrieved persons under G. L. c. 40A, § 17.

Although erroneously labelled a "motion to dismiss," GLMHRA's motion challenging the Watroses' standing expressly relied upon the board's findings and decision as well as the entire record before the board, which was already before the court on the cross motions for summary judgment. Having presented matters outside the pleadings, GLMHRA should have denominated its motion as one for summary judgment under Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). See Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974).[7] Not only were such matters "not excluded by the court," *id.*, but the judge announced at the beginning of her memorandum of decision that she was considering the undisputed material facts — which she then summarized, including the board's key findings supporting the special permit — "for purposes of both the motion to dismiss and cross motions for summary judgment."

The judge, however, proceeded to address GLMHRA's "motion to dismiss" entirely in the abstract, as if the only information before her was the Watroses' unverified complaint and as if all the conclusory allegations therein, including favorable inferences, were true under the generous and indulgent criteria for determining rule 12(b)(6) motions announced by such cases as *Nader* v. *Citron,* 372 Mass. 96, 98 (1977). On that basis, the judge declared that "the Watroses have asserted facts from which it can be inferred that they will incur tangible harm as a result of the special permit." The judge specifically relied on the Watroses' erroneous complaint allegations that under the permit the proposed use would result in more people on the locus and that there would be additional parking, as well as her own conclusions

---

[7] It is, of course, the substance of a motion and not its technical name or label that determines its nature and legal effect. Smith & Zobel, Rules Practice § 7.11 (1974); 2A Moore's Federal Practice § 7.05 (1994); 5 Wright & Miller, Federal Practice & Procedure § 1196 (1990).

(unsupported by the board's findings or anything in the record) that "traffic" would increase and that it was "self-evident" that there would be "a higher intensity of use."[8]

Treating GLMHRA's challenge to the Watroses' standing and the court's jurisdiction under G. L. c. 40A, § 17, as if it were a disembodied and unsupported motion to dismiss not only was a formality that made little sense in light of the procedural actualities facing the court; it was also erroneous. When matters outside the pleadings were explicitly presented to and not excluded (indeed, were accepted) by the judge, the matter should have been handled as a motion for summary judgment, so that the judge could look beyond the unverified pleading and apply dispositive legal principles to the undisputed facts and avoid unnecessary further proceedings. See Mass.R.Civ.P. 12(b), 365 Mass. 754 (1974) (in such a procedural posture "the motion [to dismiss] *shall* be treated as one for summary judgment" [emphasis added]); *Cousineau* v. *Laramee,* 388 Mass. 859, 860 n.2 (1983); *Davidson* v. *Commonwealth,* 8 Mass. App. Ct. 541, 542 n.2 (1979); *Carter* v. *Stanton,* 405 U.S. 669, 671 (1972); *Gibb* v. *Scott,* 958 F.2d 814, 816 (1st Cir. 1992).

In the instant circumstances, there could be no issue of prejudice or inadequate notice to the Watroses resulting from such a mandatory "conversion" of a motion to dismiss to a motion for summary judgment. GLMHRA's motion clearly stated its reliance on the entire record, as well as the pleadings, as the basis for its arguments against the Watroses' standing. All the parties, including the Watroses, had either presented or cited to that record before the board and had an opportunity to be heard on all issues. Compare *Stop & Shop Cos.* v. *Fisher,* 387 Mass. 889, 892 (1983) (party relying on extra-pleading material on a motion to dismiss

---

[8]Not only was the Watroses' complaint wrong in alleging that the special permit allowed a minimum of four persons to live in the group home rather than the board-mandated maximum of three; but the judge also erroneously assumed that the three additional persons represented an increase in the number who could live on the premises as of right. Under the zoning by-law, up to four unrelated persons could reside on the property, along with the two families already in residence.

deemed to have "constructive notice" of "conversion");
*Moody* v. *Weymouth*, 805 F.2d 30, 31 (1st Cir. 1986). The
Watroses have conceded the propriety of deciding standing
on the basis of all the documents before the court. They ex-
plicitly contended (as the judge had noted) that there was no
dispute as to any essential material fact regarding the stand-
ing issue; that all evidence needed to adjudicate standing was
properly before the motion judge; and that GLMHRA had
simply failed to sustain its burden in contesting standing
under the standards of rule 56 and *Community Natl. Bank*
v. *Dawes*, 369 Mass. 550 (1976). Cf. *In re G. & A. Brooks,
Inc.*, 770 F.2d 288, 295 (2d Cir. 1985). It was the Watroses,
however, who fell short in discharging their burden of estab-
lishing their standing to maintain an appeal as aggrieved per-
sons under G. L. c. 40A, § 17.

This court has recently outlined the standards for deter-
mining whether abutting plaintiffs have met that burden:

> " 'Aggrieved person' status *is a jurisdictional prerequi-
> site.* Unless brought by a municipal officer or board, a
> court has jurisdiction to consider a zoning appeal only if
> it is taken by an aggrieved person. Although abutters
> and abutters to abutters enjoy a presumption of ag-
> grieved person status, the presumption is rebuttable.
> Once a defendant in a § 17 appeal challenges the plain-
> tiff's standing and offers evidence to support the chal-
> lenge — as the defendants did here — the jurisdictional
> issue is to be decided on the basis of the evidence with
> no benefit to the plaintiff from the presumption. The
> plaintiff then has the burden of proof on the issue of
> standing. Satisfaction of that burden requires proof that
> the plaintiff is one of the limited class of individuals
> who are entitled to challenge a zoning board's exercise
> of discretion.

> "To qualify for that limited class, a *plaintiff must
> establish — by direct facts and not by speculative per-
> sonal opinion — that his injury is special and different
> from the concerns of the rest of the community. He
> must show that his legal rights have been, or likely will

*be, infringed or his property interests adversely affected.* Subjective and unspecific fears about the possible impairment of aesthetics or neighborhood appearance, incompatible architectural styles, the diminishment of close neighborhood feeling, or the loss of open or natural space are all considered insufficient bases for aggrievement under Massachusetts law.

"*Even when positing legitimate zoning-related concerns, including possible vehicular traffic increases, anticipated parking problems, and the potential for litter, a plaintiff must nonetheless offer more than conjecture and hypothesis. He must provide specific evidence demonstrating a reasonable likelihood that the granting of a special permit will result, if not in a diminution in the value of his property, at least in his property or legal rights being more adversely affected by the activity authorized by the permit than (a) they are by present uses and activities or (b) they would be as a result of the uses and activities permitted as of right on the defendant's locus.* Otherwise, a would-be plaintiff lacks the requisite standing and cannot maintain an appeal under G. L. c. 40A, § 17, even if his property abuts or is very near the property subject to the permit." (Emphasis added).

*Barvenik* v. *Board of Aldermen of Newton,* 33 Mass. App. Ct. 129, 131-133 (1992) (footnotes omitted). These principles have been reiterated, in a summary judgment context, in *Cohen* v. *Zoning Bd. of Appeals of Plymouth,* 35 Mass. App. Ct. 619, 621-622 (1993) ("the challenged plaintiff [opposing summary judgment] . . . must come forward with 'specific facts' to support the assertion of status as an aggrieved person" demonstrating special injury to his own private rights or interests); *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, post* 931, 933 (1994). See also *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 559-562 (1992) (standing at the summary judgment stage requires that the plaintiff can no longer rest on the mere allegations of the complaint but must set forth, by affidavit or other evidence,

specific facts showing actual, perceptible harm to the plaintiff in a personal and individual way).

Under these controlling standards, the judge should have allowed GLMHRA's motion attacking the Watroses' standing. Their presumptive standing as abutters receded and their burden of going forward on standing sprang up when their unsworn complaint assertions as to aggrievement were directly challenged by the denials and affirmative defenses in the defendants' answers. See *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 626 (1977). They submitted no affidavits or other material to establish the requisite adversity of impact to their peculiar rights. The unverified allegations of their complaint were entitled to no consideration in evaluating the matter, see *Godbout* v. *Cousens*, 396 Mass. 254, 262-263 (1985), and provided no specific facts as to the impact of the proposed project on them in any event. See 660 and note 4, above. The judge made no findings with respect to their standing but erroneously relied solely on those naked allegations. The Watroses point to nothing in the record before the motion judge which even suggests, let alone establishes, that the permitted project will diminish or adversely affect their property or legal rights, or that any effect on them would be more adverse than it would be as a result of continuation of the present use of the Miliarases' property or as a result of additional uses and activities permitted as of right.

On the contrary, to the extent the record discloses relevant and uncontradicted facts, derived from the board's findings, they militate against the Watroses' standing, since they indicate no increase in parking, traffic, or permitted persons resulting from the permitted use on the Miliarases' property, nor any physical changes incompatible with the existing character of the area. Finally, "[e]ven assuming that the anticipated . . . increases [in parking, traffic, and population] . . . will result, there [was] no specific showing [by the Watroses] that [they] will either be injured [thereby] or that such an injury would be special and different from that which others throughout the zone would experience . . . .

Even read generously, the [complaint] does not meet the requisite test of factual substantiality." *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, 35 Mass. App. Ct. at 623.

Accordingly, the judgments denying GLMHRA's motion to dismiss and granting summary judgment in favor of the Watroses are reversed; and a new judgment is to be entered dismissing the Watroses' complaint.

*So ordered.*