KRISTEN M. ROGERS *vs.* TOWN OF NORFOLK & another.[1]

Norfolk. February 7, 2000. - August 29, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Child Care Facility. Zoning,* By-law, Validity of by-law or ordinance, Child
care facility. *Municipal Corporations,* By-laws and ordinances. *Statute,*
Construction.

A "footprint" restriction on child care facilities imposed by a zoning bylaw
was facially valid and not in contradiction of G. L. c. 40A, § 3, third par.,
where it reasonably furthered a legitimate municipal interest, viz., to
ensure that the size of child care facilities did not detract from the town's
predominantly residential character [377-380], and where the bylaw did
not act impermissibly to restrict the establishment of such facilities
[380-381]. IRELAND, J., dissenting, with whom SPINA, J., joined.

A municipal zoning bylaw that restricted the allowable "footprint" of child
care facilities to 2,500 square feet was unreasonably restrictive as applied
to an existing residential structure with a footprint of approximately 3,200
square feet, where the purpose of the bylaw was to preserve the residential
character of the town, and where the structure in question conformed to the
styles and character of residences in the area. [383-385]

CIVIL ACTION commenced in the Superior Court Department on
September 25, 1995.

The case was heard by *Paul A. Chernoff,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

The case was submitted on briefs.

*Thomas J. Carey, Jr.,* for the plaintiff.

*George A. Hall, Jr.,* for the defendants.

GREANEY, J. We transferred this case to this court on our own
motion to decide whether a provision of the zoning bylaw of
the town of Norfolk that restricts the so-called footprint of a
child care facility to 2,500 square feet is valid in light of G. L.
c. 40A, § 3, third par., which limits a municipality's ability to
subject child care operations to requirements contained in zon-

---

[1]The zoning board of appeals of Norfolk.

ing ordinances and bylaws.[2] The plaintiff proposed to convert her single-family residence in Norfolk, which has a "footprint" of approximately 3,200 square feet, into a child care facility. We conclude that the questioned provision is valid on its face, but that, as applied to the child care facility that the plaintiff intends to set up, the provision presents problems that should be resolved in her favor to allow the use.

The background of the case is as follows.[3] The plaintiff is a well-credentialed early childhood educator, who has owned and operated two group child care centers, one in Millis (licensed for thirty-nine children) since 1986, and one in Medway (licensed for sixty-nine children) since 1990.[4] After receiving requests to consider opening a child care center in Norfolk, the plaintiff began looking for a possible site in the town.

The plaintiff selected (and jointly purchased with her husband) property at 197 Seekonk Street, in Norfolk, with the intention of operating a child care facility on the premises. The plaintiff's property is located in the R-3 district of the residential zone,[5] and contains 58,791 square feet, which exceeds the minimum R-3 lot size of 55,000 square feet. The structures on the property include a one-story residence that has an attached

---

[2]General Laws c. 40A, § 3, third par., reads as follows:

"No zoning ordinance or bylaw in any city or town shall prohibit, or require a special permit for, the use of land or structures, or the expansion of existing structures, for the primary, accessory or incidental purpose of operating a child care facility; provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements."

[3]The judge made findings of fact and rulings of law. His findings include some, but not all, of the information now recounted. That information is based on undisputed documentary and other evidence.

[4]License capacity refers to the maximum number of children permitted on the premises at any one time by the office of child care services, the State agency charged with providing licenses for child care centers. G. L. c. 28A, § 4 (*c*). 102 Code Mass. Regs. § 1.03(2) (1997). Depending on the needs of the families a child care center serves (full-time or part-time day care), a child care center's license capacity may differ from the number of children the center actually serves.

[5]The town has three residential districts, R-1, R-2, and R-3. The residential district comprises ninety-five per cent of the town's land. The remaining five per cent of the land in Norfolk is divided into three other districts, the business district, the commercial district, and the "health maintenance and professional office" (HM & PO) district. There are four business districts, numbered B-1 through B-4, and five commercial districts, numbered C-1 through C-5.

garage and sunroom. The total footprint[6] of the residence, including the attached garage and sunroom, is 3,169 square feet. The property also contains a two-story garage and a two-story barn, both of which are detached.

The residence is located in the rear portion of the property, with the barn and detached garage on the right. The principal entrance faces the rear of the lot. A U-shaped drive circles the residence, and there is a curb cut at each end of the drive. With the exception of the back of the premises, the residence is screened by trees, by the other structures on the land, and, to some extent, by existing topography. The closest neighboring residences are 140 feet, 155 feet, and 170 feet away. The residence was originally built as a dog kennel, and later was converted into a single-family residence. Due to the original design of the residence, the rooms are unusually large.

The plaintiff indicated that she and her husband purchased the property because many of its features, including its circular drive, large rooms in a single-story residence,[7] and exterior buffers, provided a good setting for child care. In the residence, only about 1,700 square feet can qualify as usable child care space under the office of child care services licensing guidelines, which is enough to serve approximately forty-five children at a time.[8]

---

[6]The term "footprint" is defined in the Norfolk zoning bylaw as "[t]he land area occupied by BUILDINGS or STRUCTURES, at the surface of the ground, excluding open porches." The term "building" is defined as "[a]ny STRUCTURE used or intended for supporting or sheltering any use or occupancy. Any such STRUCTURES which share a common wall, but are located on separate LOTS, shall be considered to be separate BUILDINGS." The term "structure" is defined in the bylaw as "[a]ny construction, erection, assemblage or other combination of materials upon the land, necessitating pilings, footings or a foundation for attachment to the land, including swimming pools."

[7]The plaintiff testified that a residence having a single story, as opposed to two or more stories, was preferable to house a child care facility because, pursuant to the office of child care services regulations concerning compliance with the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. (1994) (ADA), if a day care facility cannot locate all of its programs on the first floor of the facility, then the facility must make its second floor accessible to children with disabilities. While the plaintiff testified that ADA compliance, with respect to a multi-level building, would be "more difficult and less desirable for safety reasons, for access reasons," she furnished no evidence concerning the possible costs related to such compliance.

[8]The office of child care services requires that a group day care center

Norfolk's schedule of uses allows child care facilities in all of the town's districts. The zoning bylaw defines a "child care facility" as "[a] day care center or school age child care program as those terms are defined in G. L. c. 28A, Section 9[9]; provided that the ground area covered by the BUILDING in which such business is located does not exceed 2,500 square feet." The term "ground area" is synonymous with footprint. Members of the planning board of Norfolk, who were on the board at the time that the zoning bylaw was amended to include this definition, testified (and the judge accepted their testimony) that the purpose of the footprint limitation was to allow child care facilities, but to regulate their size to ensure consistency with the size of residential structures. (It is important to state here that ninety-five per cent of the town is residentially zoned, and, of the approximately 2,300 houses in Norfolk, the "footprint" of the average sized house is a little under 1,700 square feet.) Because the footprint of the plaintiff's residence (3,169 square feet) exceeded the footprint permitted for child care facilities in the zoning bylaw (2,500 square feet), the plaintiff was informed by the building commissioner, and, subsequently, the zoning board of appeals, that she could not obtain a building permit, or other zoning approval, to use her residence as a child care facility.

The plaintiff commenced an action in the Superior Court, which, as far as now relevant, sought a declaratory judgment that the provision of the zoning bylaw imposing a footprint limitation on a child care facility was unlawful. After a bench trial, a judge in the Superior Court concluded that the provision was facially valid, but invalid as applied to the plaintiff's proposed use. This appeal followed. The sole issue concerns the validity of the footprint provision in the bylaw in light of G. L. c. 40A, § 3, third par.

1. Although we have never examined G. L. c. 40A, § 3, third par., we have had occasion to interpret analogous language, set forth in G. L. c. 40A, § 3, second par., inserted by St. 1975, c. 808, § 3 (Dover Amendment), affording educational and

---

"have a minimum of 35 square feet of activity space per child, exclusive of hallways, lockers, wash and toilet rooms, isolation rooms, kitchens, closets, offices or areas regularly used for other purposes." 102 Code Mass. Regs. § 7.25(5) (1997).

[9]General Laws c. 28A, § 9, provides particularized definitions for the terms "[d]ay care center" and "[s]chool age child care program." The definitions, which we need not repeat here, apply to the plaintiff's proposed use.

religious institutions protection from local zoning regulation. See *Campbell* v. *City Council of Lynn*, 415 Mass. 772 (1993); *Trustees of Tufts College* v. *Medford*, 415 Mass. 753 (1993). In *Trustees of Tufts College* v. *Medford, supra* at 757-758, we held that "[l]ocal zoning requirements adopted under the proviso [amendment allowing 'reasonable regulations'] to the Dover Amendment which serve legitimate municipal purposes sought to be achieved by local zoning, such as promoting public health or safety, preserving the character of an adjacent neighborhood, or one of the other purposes sought to be achieved by local zoning as enunciated in St. 1975, c. 808, § 2A, see *MacNeil* v. *Avon*, 386 Mass. 339, 341 (1982), may be permissibly enforced, consistent with the Dover Amendment, against [a protected] use . . . so long as the provision is shown to be related to a legitimate municipal concern, and its application bears a rational relationship to the perceived concern. On the other hand, a zoning requirement that results in something less than nullification of a proposed educational use may be unreasonable within the meaning of the Dover Amendment." (Citations omitted.) A Dover Amendment type analysis, like that used in the *Tufts* decision and related cases, as encapsulated in the quotation from *Tufts*, formed the basis of the judge's decision. We agree that such an analysis is appropriate here.

The plaintiff argues that the footprint limitation is facially invalid, because the limitation unlawfully discriminates against child care facilities, in contradiction of the language and purpose of G. L. c. 40A, § 3, third par. She may prove this claim by showing that the provision either prohibits, or requires a special permit (or other local approval) for, child care facilities, a matter not in issue, or that the provision acts in such a way as to nullify the protection granted by G. L. c. 40A, § 3, third par., to child care facilities, the precise matter in issue. See *Trustees of Tufts College* v. *Medford, supra* at 758, 765; *The Bible Speaks* v. *Board of Appeals of Lenox*, 8 Mass. App. Ct. 19, 32-33 (1979).

The plaintiff's contention is based on the principle that a court may strike down Norfolk's "use specific" provision as facially invalid, if, after some showing by her that the provision imposes a greater restriction on child care facilities than on other uses, Norfolk fails to offer a reason for the disparate treatment satisfactory to the court, even though the reason is well established as a justification for the exercise of local zoning

regulation. This approach is wrong. A challenged provision in a zoning bylaw is presumptively valid, and a challenger bears the burden to prove otherwise. See *Johnson* v. *Edgartown*, 425 Mass. 117, 121 (1997). There is no basis to assume that G. L. c. 40A, § 3, third par., was intended to grant child care facilities such a measure of heightened protection that Norfolk is required to prove that the footprint provision was not intended to be discriminatory. Nothing in the language of G. L. c. 40A, § 3, third par., requires local officials to treat a child care facility the same as a residential use, or makes unlawful the adoption of a provision in a zoning bylaw that differentiates between building coverage requirements applicable to child care facilities and other uses. Indeed, there is indication that the Legislature, in enacting G. L. c. 40A, § 3, second par., authorized municipalities to impose regulatory measures on educational and religious uses, in order to protect the character and well-being of established neighborhoods, as long as "the regulation will not seriously jeopardize the mission of the protected institutions." 1972 House Doc. No. 5009. See *Trustees of Tufts College* v. *Medford, supra* at 770 (Appendix). Further, the Legislature contemplated that a municipality could permissibly adopt zoning restrictions specifically tailored to the protected use. As is stated in the legislative report that gave rise to the power of a municipality to regulate a use protected by the Dover Amendment: "Ideally, [municipal restriction] should be accomplished by adopting regulations specifically designed to apply to uses protected by the Dover Amendment located in otherwise restricted zones, thus avoiding the problem of attempting to apply the *same* bulk regulations to the protected uses as ordinarily apply to other permitted uses in the zone" (emphasis original). *Id.* at 771. In the absence of clear legislative directive to the contrary, a court should not stray from the mandates of settled law and strip a zoning provision of its presumption of validity because the provision imposes greater restrictions on child care facilities than on other uses.

The proper test for determining whether the provision in issue contradicts the purpose of G. L. c. 40A, § 3, third par., is to ask whether the footprint restriction furthers a legitimate municipal interest, and its application rationally relates to that interest, or whether it acts impermissibly to restrict the establishment of child care facilities in the town, and so is unreasonable. The provision is facially valid under this test. The judge properly

concluded, on the only evidence before him, that the purpose of the provision was to ensure that the size of child care facilities did not detract from Norfolk's predominantly residential character by inserting in residential zones particularly large structures. As both parties acknowledge, preservation of the residential character of neighborhoods is a legitimate municipal purpose to be achieved by local zoning control. See *Trustees of Tufts College* v. *Medford, supra* at 757-758. In view of the fact that ninety-five per cent of the land in Norfolk is residentially zoned, the provision clearly is a reasonable accommodation between the need to establish child care facilities and the need to preserve the predominant nature of Norfolk's residential zones, a matter of serious concern to the town.[10] See *id.* at 760. The provision focuses on the fact that child care facilities are commercial enterprises, and thereby have a greater potential than residential uses to disrupt, or detract from, the town's tranquility. A child care facility of larger dimensions will likely generate more traffic and create more noise, all of which may have greater impact on a town composed mainly of single-family homes.

We reject the plaintiff's assertion that restricting a child care facility to a structure with a footprint equal to, or less than, 2,500 square feet, unreasonably prohibits the use of buildings in Norfolk for child care facilities, and so nullifies the protection granted by G. L. c. 40A, § 3, third par. There are two principal reasons why this claim is rejected. First, ninety per cent of the 2,300 residences in Norfolk fit within the footprint restriction (the footprint of the average sized property is a little under 1,700 square feet)[11] and, as has been indicated, ninety-five per cent of the town's land is residentially zoned. Second, in the

---

[10]An examination of the Norfolk zoning bylaw discloses other footprint restrictions that evidence a local concern for regulating the size of structures. In the C-1 district, for example, all uses, except religious, educational, agricultural, farmers' markets, and open space, village greens and squares, must have a building with a minimum footprint of 2,000 square feet. In both the C-1 and C-4 districts, no building footprint, other than manufacturing or offices, may exceed 50,000 square feet. In the B-1 district, all uses are subject to a footprint restriction of less than or equal to 8,000 square feet, with the exception of grocery and variety stores (45,000 square feet) and municipal buildings (20,000 square feet). In addition, convenience stores, by definition, are uniformly limited to structures with "gross floor area" (measured slightly differently from footprint) of less than 5,000 square feet.

[11]If the record established, for example, that none or few of the buildings in Norfolk had a footprint equal to, or less than, 2,500 square feet, and there

zones other than residential (business, commercial, and "health maintenance and professional office"), which comprise the remaining five per cent of the land in Norfolk, the provision in issue does not prohibit the operation of a child care facility in a building having a footprint equal to, or less than, 2,500 square feet. Moreover, the uses allowed by Norfolk's zoning bylaw in the town's nonresidential zones are of a type that would ordinarily not be expected to contain, or be suitable for, a child care facility. Included among these uses are bus or railway stations; restaurants; retail stores; office buildings; manufacturing facilities; and service establishments like beauty salons, dry cleaners, and various kinds of repair shops. The provision does not prohibit new construction of a child care facility in any zone. Thus, the factual, on the ground, character of Norfolk's residences and structures allows for child care facilities in virtually all of the town's buildings where a child care use would be expected or feasible. Because child care facilities by their nature are different from churches or educational institutions, and may tend to be more ubiquitously located, it cannot be persuasively argued that a regulation that permits such facilities in all but a small fraction of the town's buildings is unlawful. Finally, the provision could not be enforced to prevent a child care facility in a church or educational institution, which are separately protected by the provisions of G. L. c. 40A, § 3, second par., for all uses related to their primary missions.

We reject the contention in the dissent that there is no reasonable justification for the footprint restriction, because it does not serve the stated purpose of preserving the rural character of residential neighborhoods. The dissent reasons, in effect, that the provision is invalid because it is both over, and under, inclusive. First, the dissent objects to the fact that the provision applies to all of Norfolk's use districts, and concludes that the goal of preservation of residential zones is not served by applying a dimensional regulation to commercial or business zones. The dissent also finds fault with the provision because it does not apply to other uses in the residential zone. It proceeds on the assumption that the goal of preserving the rural character of residential zones is not met by restricting the footprint of only child care facilities while at the same time allowing structures

---

were no or few buildable lots in the town, then we could conclude that the effect of the provision would be to prohibit child care uses, rendering the provision facially invalid.

not used for child care purposes to exceed the footprint restriction imposed on child care facilities.

Both generalizations are inaccurate. Large structures on land zoned for commercial or business uses might very well have a negative impact on an adjacent residential neighborhood, especially if the neighborhood were physically surrounded by commercial or business districts. In addition, there are valid aesthetic reasons why the town might desire to restrict the size of a child care facility, but not other uses, within its residential districts. A child care facility is, after all, a commercial use, and the only commercial use allowed within the town's residential districts.

Further, the hypothetical problems envisioned by the dissent raise only chimerical situations. Our holding will have no effect on the status and rights of churches or educational institutions that, as we have indicated, are separately protected by legislation and established case law. Thus, it makes no sense to suggest that the town might impose small footprint requirements on churches or schools just to keep residential neighborhoods "rural." Of equally dubious relevance are the following statements in the dissent: "whether the size or style of a structure conforms to the aesthetics of the neighborhood is unrelated to the use of that structure. If indeed footprint limitations equal 'ruralness,' then all structures in the neighborhood that is sought to be preserved should be similarly limited." *Post* at 387-388. Ignoring the nonsequiturs implicit in the statements, we emphasize that the whole point of Norfolk's provision is to allow the presence of a single type of commercial use in residential neighborhoods, where the footprints of virtually all existing structures are 2,500 square feet or less, thus tending to mitigate the effects that the commercial use will have on the neighborhoods by reason of size, traffic, signage, noise, outside activities and the like (all these considerations being common to child care facilities). The plaintiff has made no showing that child care facilities cannot be established in buildings in Norfolk within the footprint requirement, and what may go on in other buildings in other zones is beside the point. The dissent overlooks the fact that the exercise of zoning authority calls for balancing rights or privileges of use with the character of neighborhoods, a task which necessarily calls into play issues of size, location, setback, traffic, and the sundry other matters addressed in local land use and zoning bylaws and ordinances. The fact that, in the dissent's opinion, Norfolk could have

enacted a provision that would have better served the town's interests, has no place in an analysis, under G. L. c. 40A, § 3, third par., of the validity of the provision that Norfolk chose to adopt. See *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 760 (1993).

In sum, the provision is presumed to be valid, and the plaintiff must demonstrate that it is not.[12] The test is not the other way around. The provision is within the authority granted to a municipality by the Legislature in G. L. c. 40A, § 3, third par., and in conformance with the legislative suggestion that municipalities design regulations that specifically apply to Dover Amendment uses as distinguished from more general restrictions that apply to all uses including Dover Amendment uses. We conclude that the provision was validly adopted to protect and preserve the residential character of Norfolk and that it is not repugnant to G. L. c. 40A, § 3, third par.

2. We turn now to the plaintiff's claim that the provision is unreasonably restrictive as applied to her property, keeping in mind that the pertinent language of § 3, third par., seeks to strike a balance between preventing local discrimination against child care facilities and respecting legitimate municipal concerns. See *Trustees of Tufts College* v. *Medford, supra* at 757. "[T]he question of the reasonableness of a local zoning requirement, as applied to a proposed [exempt] use, will depend on the particular facts of each case. Because local zoning laws are intended to be uniformly applied, an [applicant] will bear the burden of proving that the local requirements are unreasonable as applied to its proposed project. The [applicant] might do so by demonstrating that compliance would substantially diminish or detract from the usefulness of a proposed structure, or impair the character of the [applicant's property], without appreciably advancing the municipality's legitimate concerns. Excessive cost of compliance with a requirement imposed [by the zoning ordinance] . . . without significant gain in terms of municipal concerns, might also qualify as unreasonable regula-

---

[12]The plaintiff has fallen far short of showing that the provision was either intended to discriminate against child care facilities, or has that practical effect. The fact that no new child care facilities have been established in Norfolk since the provision was adopted affords no basis for a court to declare the provision invalid, in the absence of a specific showing that conforming properties are unavailable, or that State and Federal requirements, coupled with the restriction, make the establishment of child care facilities in conforming properties economically unfeasible.

tion of an [exempt] use.'' *Id.* at 759-760. In addition, in determining the reasonableness of a zoning provision, we may inquire whether ''the requirement[] sought to be applied . . . take[s] into account the special characteristics of [the exempt] use.'' *Id.* at 758-759 n.6. A practical examination of this case leads to the conclusion that the provision is unreasonable as applied to the plaintiff's property.

The plaintiff proposes to use an existing residential structure that, the judge (who may have taken a view of the property)[13] concluded, conforms to the styles and character of residences in the area. The lot is a spacious 58,791 square feet, and the residence is screened (with the exception of the back) by trees, two other structures on the lot, and by topography. The adjacent neighbors are, respectively, 140 feet, 155 feet, and 170 feet away. Unique characteristics of the property, including a one-story structure with large rooms for functional utility and handicapped accessibility, curb cuts for a circular driveway for ease of egress and fire safety, make it ideal for child care use. All generally applicable zoning requirements have been met. While compliance with the provision is technically possible, if the porch and the garage were removed, the uncontested evidence is that elimination of the garage would affect the structural integrity of the building,[14] and would serve no useful purpose. Norfolk's interest in preserving the residential appearance of its neighborhoods is legitimate, but the use of the plaintiff's residence for a child care facility would not affect the aesthetic appearance of the neighborhood in a manner that the bylaw was intended to discourage.

The defendants do not correctly apply our decision in *Trustees of Tufts College* v. *Medford, supra,* when they assert that a court may not grant an exemption to the provision without

---

[13]The record indicates that the judge was requested, and agreed, to take a view of the plaintiff's property, although the record does not confirm that he did so. A view, while it does not constitute evidence, would be of importance in a case such as this, particularly with regard to the feasibility of the property's modification to meet the footprint restriction.

[14]The garage and the residence sit on a rectangular slab of concrete, and are covered by one roof. The plaintiff testified that the removal of the garage would ''have butchered'' the residence, and the removal of both the garage and sunroom would be costly. The plaintiff did not testify as to, or offer other evidence of, the potential costs of this option, but common sense dictates that removing attached portions of a residence may impair the integrity of the over-all structure.

particularized evidence that no other options (for example, use of the two-story barn on the property; construction of a conforming one-story facility on the property; or the availability of an alternative property in the town) were available for the plaintiff's proposed child care facility. The central question is whether application of the footprint requirement to the plaintiff's proposed project furthers a legitimate municipal concern to a sufficient extent to warrant requiring the plaintiff to alter her plans. *Id.* at 764. "Particularized proof" as to cost of compliance is not required in every case. As we made clear in the language of the *Tufts* decision, *id.* at 759-760, set forth above, proof of cost of compliance is only one way to show the unreasonableness of applying an otherwise valid regulation to a particular property.[15] See *Campbell* v. *City Council of Lynn*, 415 Mass. 772, 778 (1993). When the record satisfactorily demonstrates, as it does here, that the application of the footprint requirement to the plaintiff's property would significantly impede the use of the premises as a child care facility, while not substantially advancing a valid goal of Norfolk's zoning regulation, the provision is unreasonable as applied.[16] See *id.* at 779.

*Judgment affirmed.*

IRELAND, J. (dissenting, with whom Spina, J., joins). Because Norfolk's bylaw subjects child care uses to a more restrictive footprint limitation than other uses, and because Norfolk does so in the absence of any reasonable basis for such discriminatory treatment, the bylaw "nullif[ies] the protection granted by G. L. c. 40A, § 3, third par., to child care facilities," *ante* at 378, and is therefore facially invalid. I therefore respectfully dissent.

[15]If the plaintiff proposed to construct a building with a footprint in excess of 2,500 square feet, our concerns for the need for particularized proof of costs of compliance, as expressed in *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 763 (1993), would be relevant.

[16]We reject the defendants' claim that the judge did not make the proper findings to support his conclusion that the bylaw is unreasonable as applied to the plaintiff. The judge's conclusion, was based, as is ours, on a practical examination of the application of the provision to the uncontested facts in the record concerning the nature of the plaintiff's property. As has been stated above, a specific finding in this case that the application of the provision would prevent the development of a child care facility on the property was not required.

The court states that the appropriate test to determine the facial validity of Norfolk's bylaw is "whether the footprint restriction furthers a legitimate municipal interest, and its application rationally relates to that interest, or whether it acts impermissibly to restrict the establishment of child care facilities in the town, and so is unreasonable." *Ante* at 379. In light of the purpose of G. L. c. 40A, § 3, third par., which was to encourage the availability of child care facilities, see *Petrucci* v. *Board of Appeals of Westwood,* 45 Mass. App. Ct. 818, 822-823 n.7 (1998), I believe that test is incomplete. In keeping with the purpose of the statute, a municipality should not be able to discriminate against child care uses of property unless there is a reasonable basis for the discriminatory treatment. Thus, a bylaw that is specific to child care uses and subjects the use to more restrictive regulation than other uses permitted in the zone, without a reasonable justification for that discriminatory treatment, should be invalidated. Cf. *Trustees of Tufts College* v. *Medford,* 415 Mass. 753, 757 (1993) (Dover Amendment intended to "strike a balance between preventing local discrimination against an educational use . . . and honoring legitimate municipal concerns"); *The Bible Speaks* v. *Board of Appeals of Lenox,* 8 Mass. App. Ct. 19, 30-31 (1979) (consistent with G. L. c. 40A, § 3, town may regulate bulk of buildings and impose dimensional and parking requirements, but may not "through the guise of regulating bulk and dimensional requirements under the enabling statute, proceed to 'nullify' the use exemption").

Applying the above analysis, I conclude that the Norfolk bylaw discriminates against child care uses and that Norfolk has not offered a reasoned basis for that discriminatory treatment. First, as Norfolk's 2,500 square foot limitation applies only to child care uses, Norfolk's bylaw is use specific. Second, the bylaw subjects child care uses to discriminatory treatment. Norfolk limits child care facilities to buildings with footprints of 2,500 square feet or less, and this limitation applies across all of Norfolk's use districts. No other use is subjected to such a universal and uniform limitation. Of the thirteen various residential, business, commercial, and health maintenance and professional office use districts in Norfolk, only districts B-1, C-1, and C-4 have any footprint restrictions. These restrictions are substantially larger and most are subject to override by a

special permit process.[1] As far as the justification for the bylaw, the trial judge found, and Norfolk does not dispute, that the purpose of the bylaw was to "protect[] and preserv[e] the rural character and aesthetics of Norfolk's residential zones."

I agree that the preservation of the aesthetic qualities of a residential neighborhood is not, by itself, an unreasonable basis for a discriminatory bylaw. However, Norfolk should be required to offer some reasonable basis for restricting the footprint of only child care facilities. Norfolk should be required to offer some rational reason why limiting the size of only structures used for child care facilities will preserve the rural character of its residential neighborhoods, while at the same time allowing larger structures used for other purposes. In my view, only if there is some rational reason why limiting the size of *only* child care facilities, and not other buildings, preserves the rural character and aesthetics of the town can the bylaw survive.

I conclude that Norfolk has not offered a rational reason for its discriminatory treatment of child care facilities. First, the goal of preservation of the rural character of the residential zones is generally not served by applying a dimensional regulation to commercial or business zones. Second, whether the size or style of a structure conforms to the aesthetics of the neighbor-

---

[1]The bylaws provide for the following footprint size limitation in the B-1 district:

> "No Building FOOTPRINT, other than a GROCERY STORE, Municipal BUILDING, or VARIETY STORE, shall exceed 8,000 square feet except by Special Permit. No GROCERY STORE or VARIETY STORE FOOTPRINT shall exceed 45,000 square feet except by Special Permit. No municipal BUILDING FOOTPRINT shall exceed 20,000 square feet except by Special Permit. Upon issuance of a Special Permit from the Zoning Board of Appeals, no building FOOTPRINT other than a GROCERY STORE, Municipal BUILDING or VARIETY STORE shall exceed 15,000 square feet, no Municipal BUILDING FOOTPRINT shall exceed 30,000 square feet, and no GROCERY STORE OR VARIETY STORE FOOTPRINT shall exceed 50,000 square feet."

The bylaws provide for the following footprint size limitation in the C-1 and C-4 districts:

> "No BUILDING FOOTPRINT, other than MANUFACTURING or Offices, shall exceed 50,000 square feet except by Special Permit by the Zoning Board of Appeals."

hood is unrelated to the use of that structure. If indeed footprint limitations equal "ruralness," then all structures in the neighborhood that is sought to be preserved should be similarly limited.

The court states that child care facilities would conceivably generate more traffic and more noise, thus disrupting residential neighborhoods. However, the Legislature was presumably aware of this when it enacted the law permitting child care facilities to operate as of right in every zone. Furthermore, if limiting traffic and noise by limiting the size of a structure is a reasonable basis for discriminating against the protected use, then what is to prevent a community from enacting an even smaller footprint restriction. Under the court's reasoning, as long as one or more structures in the community is not excluded from use by the bylaw, or as long as there is one or more buildable lots in the community, see *ante* at 380 n.11, then the bylaw would be facially valid. Although property owners may always challenge the validity of a bylaw as applied to their particular proposed facility, I cannot agree that requiring them to resort to the courts in almost every instance accords with the intent of the Legislature in enacting G. L. c. 40A, § 3, third par.

Furthermore, under the court's logic, churches and schools, which are at least as disruptive to a residential zone as a child care facility, may similarly be limited and for the same reason. This, I believe, is directly contrary to our case law. In *Sisters of the Holy Cross of Mass.* v. *Brookline*, 347 Mass. 486, 494 (1964), interpreting the precursor to G. L. c. 40A, § 3, second par., we stated that we thought "it unlikely that the Legislature would exempt religious and educational institutions from local regulations of use and at the same time permit this exemption to be virtually nullified by a requirement that such institutions construct their buildings on dimensions applicable to single family houses." If a community may not impose the *same* residential dimensional regulations to educational and religious uses, which are protected to the same extent as child care uses, why should a community be permitted to impose more restrictive dimensional regulations?[2]

Because Norfolk has not offered a reasonable justification for

---

[2]I recognize that communities may, and are encouraged to, enact bylaws that apply specifically to child care, or other protected uses. I do not think, however, that communities may discriminate against a protected use in the absence of a reasonable basis for the discrimination. See 1972 House Doc. No. 5009; *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 771 (1993)

a bylaw that discriminates against child care uses of property, I would hold the bylaw facially invalid.

(Appendix) (stating that municipalities should adopt regulations "specifically designed to apply to uses protected by the Dover Amendment located in otherwise restricted zones, thus avoiding the problem of attempting to apply the *same* bulk regulations to the protected used as ordinarily apply to other permitted uses in the zone" [emphasis original]).