Martin v. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints.

ARLEEN MARTIN & others[1] vs. THE CORPORATION OF THE
PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS.

Middlesex. January 12, 2001. - May 16, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Civil,* Standing. *Zoning,* Person aggrieved, By-law, Religious use,
Height restriction, Church steeple.

The specific provision of a particular zoning by-law providing that the board
of appeals should take into consideration the "[v]isual [c]onsequences" of
any proposed structure and that "[v]iews from public ways and developed
properties should be considerately treated in the site arrangement and
building design," was sufficient to confer standing on an abutter who chal-
lenged the construction of an eighty-three foot high church steeple in her
residential zoning district that would be visible to the abutter from most, if
not all, of her property, both during the day and when lit at night. [145-147]
In an action brought in the Superior court by an abutter of property owned by
the Mormon Church, challenging a decision by a town's board of appeals
that the projection height restriction of the applicable zoning bylaw, if ap-
plied to a steeple proposed for the roof of a temple constructed by the
church, would be an unreasonable regulation of a religious structure
prohibited by the Dover Amendment, G. L. c. 40A, § 3, second par., the
judge, in deciding that the Dover Amendment was not applicable, erred in
framing the question as "whether the construction of the spire atop the
already existing [t]emple constitute[d] the 'use of land or structures for
religious purposes' so as to trigger a Dover Amendment analysis," where
the question under the statute was whether the structure as a whole was to
be used for religious purposes [147-150]; further, the judge erred in
concluding that a steeple is not "a necessary element of the Mormon
religion," where no further inquiry was required beyond the judge's find-
ing that temples "are the places where Mormons conduct their sacred
ceremonies" [150].
In an action brought in the Superior Court by an abutter of property owned by
a church, challenging a decision by a town's board of appeals that the
projection height restriction of the applicable zoning bylaw, if applied to a
steeple proposed for the roof of a temple constructed by the church, would
be an unreasonable regulation of a religious structure prohibited by the
Dover Amendment, G. L. c. 40A, § 3, second par., the judge erred in
determining that, even if the Dover Amendment applied, the church failed
to prove that application of the bylaw to its temple was unreasonable,

[1]Jenny Altschuler, Margaret Boyajian, and Joyce Jones.

where a rigid application of the town's height restrictions for uninhabited "projections" would impair the character of the temple without advancing any municipal concern. [151-153]

CIVIL ACTION commenced in the Superior Court Department on May 19, 1997.

The case was heard by *Elizabeth M. Fahey,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Arthur P. Kreiger* for the plaintiffs.

*Paul Killeen* (*Edward J. Naughton* with him) for the defendant.

*James O. Fleckner & Andrew M. Fischer* for The American Jewish Congress, amicus curiae, submitted a brief.

MARSHALL, C.J. May the Church of Jesus Christ of Latter-Day Saints (church) build a steeple atop its new temple on the highest hill of Belmont where the proposed steeple would rise higher than the dimensional requirements of the applicable Belmont zoning bylaw? The board of appeals of Belmont (board) said yes, but its decision was annulled by a judge in the Superior Court. The church appealed, and we granted its application for direct appellate review.[2]

The church's planned temple in Belmont complied with all zoning bylaws but for the height of its proposed steeple: the steeple would rise eighty-three feet above the roof of the temple, while under the applicable Belmont bylaw the church had a permitted right to build a steeple (projection) of eleven feet, two inches. On the church's application for zoning relief, the board concluded that the bylaw's projection height restriction, if applied to the steeple, would be an unreasonable regulation of a religious structure prohibited by the Dover Amendment, G. L. c. 40A, § 3, second par.[3] We agree. We vacate the judgment of the Superior Court because it is inconsistent with that statute.

---

[2]The board of appeals of Belmont also filed a notice of appeal. It did not, however, file a brief or otherwise pursue its appeal.

[3]General Laws c. 40A, § 3, second par., provides:

"No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes . . . on land

## I

Since 1979, the church has owned a nine-acre wooded lot in Belmont. Bounded on the north by a major highway, Route 2, the lot is surrounded on the east, south, and west by single-family residences. In 1995, the president of the church, Gordon B. Hinckley, announced plans to construct a temple on the lot. The construction of a temple, which is used to perform three sacred ceremonies, is a matter of deep religious significance to the church and its members, who believe that the location and design of temples are revealed by God to the presidency of the church.

The Belmont temple site is located in the single residence-A (SR-A) zoning district. Section 3.3 of the Belmont zoning bylaw allows religious uses by right in an SR-A zone.[4] Because of the large size of its lot, the church had the right to construct a temple of up to "60 feet or 4 stories in height"[5]; its temple plan met that and all other zoning requirements. The permissible height of the steeple is governed, in turn, by § 4.2.2 n.1 of the Belmont bylaw concerning uninhabited "projections."[6] Because the church's eighty-three foot proposed steeple, which

---

owned . . . by a religious sect or denomination . . . provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements."

[4]Section 3.3 of the Belmont zoning bylaw provides that "[r]eligious or educational use[s] exempted from prohibition by [G. L. c. 40A, § 3,]" are permitted in all of Belmont's single residence zones.

[5]Section 4.2 of the Belmont zoning bylaw provides that buildings in the single residence-A (SR-A) zone of Belmont may be no more than thirty-six feet, or two and one-half stories high. However, "[g]reater height is permitted provided the building setback from each street and lot line exceeds otherwise applicable requirements by 10 feet plus one foot for each foot of excess height, but in no case shall building height exceed 60 feet or 4 stories in height." Section 4.2.2 n.5. The temple is set back over 300 feet from most of the surrounding lots, and no less than 165 feet from the nearest building.

[6]Section 4.2.2 n.1 of the Belmont zoning bylaw provides that:

"Chimneys, towers and other projections not used for human occupation may exceed the height limitations herein provided that . . . any such projection above the building exceeding 10 feet or 20% of the

included at the top a ten-foot statue of the Angel Moroni,[7] did not comply with that bylaw, the church applied for a special permit to exceed the height limit and, alternatively, a determination that application of the bylaw's height restriction to the steeple would violate the Dover Amendment, G. L. c. 40A, § 3, second par.

Beginning in May, 1996, and continuing over many months, the board held numerous public hearings on the church's application. On April 28, 1997, the board granted the requested relief. The board noted that the Dover Amendment requires a degree of accommodation between protected uses and matters of critical municipal concern. It found that there is "no grave municipal concern in controlling steeple height on churches," and that it was "hardly accommodating to a protected use to limit the Church to a 12 foot projection."[8] The board concluded that the steeple height requested by the church was reasonable "as a Dover type regulation of height." The board also concluded that the "benefits" provided by the church outweigh the burdens that could result from the steeple height, and that the height of the steeple requested by the church was reasonable "as a special permit matter."[9]

The plaintiffs brought an action in the Superior Court challenging the board's decision pursuant to the Zoning Act, G. L. c. 40A, § 17.[10] In response the board and the church challenged the standing of each of the plaintiffs to seek relief from the board's ruling. A judge in the Superior Court rejected that argu-

---

building height, whichever is greater, shall be allowed by special permit only."

[7]The church presented uncontested evidence that the Angel Moroni is an important religious symbol for the church, the equivalent of a cross for other Christian-based faiths. Members believe the Angel Moroni appeared to Joseph Smith, the founder of the church.

[8]The twelve-foot steeple refers to the steeple height that would have been allowed by right under the church's initial application. See note 22, infra.

[9]Section 7.4.2 of the Belmont zoning bylaw provides that a special permit "shall be granted only if the Special Permit Granting Authority determines that the proposal's benefits to the Town will outweigh any adverse effects for the Town." Other special permit criteria specified in § 7.4.2, such as location, access, and the process to be followed, are "preferred" rather than required.

[10]General Laws c. 40A, § 17, provides, in pertinent part:

434 Mass. 141 (2001) 145

Martin v. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints.

ment and concluded that at least one of the plaintiffs had standing. The judge then ruled that the Dover Amendment did not apply to the church's application for zoning relief because "neither the presence nor the height" of the steeple represents a "necessary element of the Mormon[11] religion." She also concluded that the board had abused its discretion by issuing a special permit allowing the steeple.

## II

The plaintiffs Arleen Martin, Jenny Altschuler, and Margaret Boyajian are owners of residential properties that abut the temple site. The plaintiff Joyce Jones is the owner of residential property that "abuts a way which abuts an abutter to the church property," and resides within 300 feet of the temple. The church first challenges the judge's decision affirming the standing of all four plaintiffs to bring this action. We agree with the judge that Martin has standing, albeit on grounds somewhat different from those on which the judge relied. We therefore need not address the standing of the remaining three plaintiffs. See *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 674-675 (1975); *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 n.7 (1986).[12]

As an abutter to the temple site, Martin enjoys a rebuttable presumption that she is a "person aggrieved" under G. L.

---

"Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . may appeal to . . . the superior court department in which the land concerned is situated . . . ."

[11]Members of the church are sometimes referred to as "Mormons" or members of the "LDS" faith.

[12]The plaintiffs also sought review of the board's decision in the nature of certiorari pursuant to G. L. c. 249, § 4, as well as a declaratory judgment regarding the propriety of the board's ruling pursuant to G. L. c. 231A, § 1. Review in the nature of certiorari is available only where no other remedy is available and review is necessary to correct "a substantial injury or injustice arising from the proceeding under review." *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs*, 405 Mass. 67, 72 (1989). The judge concluded that, because the claims could be reviewed under G. L. c. 40A, § 17, the plaintiffs could not avail themselves of G. L. c. 249A, § 4, and that declaratory relief was not appropriate for the same reason; the judge therefore dismissed counts II and III of the complaint. The plaintiffs filed a cross appeal challenging that

c. 40A, § 11. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 553-554 (1999), quoting *Marashlian* v. *Zoning Bd. Of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). Martin claimed that she would be adversely affected by the shadow of the steeple, as well as the steeple's visual impact. The judge found that Martin "would have a view of most, if not all, of the steeple from her back door and part of her patio, as well as a clear view from areas in her yard where she regularly gardens and landscapes"; she "also would see the spire from the front of her house." The judge pointed to the fact that the proposed steeple was 139 feet,[13] and would be built at the top of a hill in Martin's backyard. She concluded that Martin had standing because of the "extreme and unique" visual impact caused by the "presence of such an enormous structure looming over" Martin's property.

Generally, concerns about the visual impact of a structure do not suffice to confer standing, and we are not persuaded by the judge's reasoning on this point. See *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989). But Belmont's zoning bylaw itself provides that the board should take into consideration the "[v]isual [c]onsequences" of any proposed structure. Subsection (1) of § 7.4.2 (c) of the bylaw provides that "[v]iews from public ways and developed properties should be considerately treated in the site arrangement and building design."[14] A defined protected interest may impart standing to a person whose

aspect of the judge's decision. Because relief is available under G. L. c. 40A, § 17, we do not reach the cross appeal. See Part III, *supra*.

[13]It is apparent that the judge was referring to the combined height of the main structure of the temple and the steeple.

[14]Section 7.4.2 (special permit criteria) of the Belmont bylaw states in pertinent part:

> "The following shall be the basis for decisions on special permits . . . Special Permits shall be granted only if the Special Permit Granting Authority determines that the proposal's benefits to the Town will outweigh any adverse effects for the Town or the vicinity, after consideration of the following preferred qualities, among other things:

"(c) Visual Consequences.

> "(1) Views from public ways and developed properties should be considerately treated in the site arrangement and building design."

impaired interest falls within that definition. See *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688-689 (1994), citing *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 431 (1949). In *Monks* v. *Zoning Bd. of Appeals of Plymouth, supra*, homeowners appealed from the grant of a special permit to build a communications tower. The Appeals Court held that a bylaw similar to the one at issue here[15] did not confer automatic standing on abutters, but the abutters could establish that they were within the legal scope of the protection created by it. *Id.* at 688. In that case the abutters did so by demonstrating that the tower "would be 'clearly visible from almost every window' of their home." *Id.* at 687. Here the judge found that the towering steeple would be visible to Martin from most, if not all, of her property, both during the day and when lit at night.[16] We conclude that Martin has demonstrated that she came within the scope of Belmont's bylaw protection sufficiently to confer standing on her.[17]

## III

The Dover Amendment precludes the adoption of zoning ordinances or bylaws restricting the use of land for religious (and other exempt) purposes, G. L. c. 40A, § 3, second par., but authorizes "reasonable regulation[]" of bulk, height, yard size,

---

[15]The zoning bylaw at issue in *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 686-687 (1994), provided that:

> "No structure shall be built . . . to above a height of thirty-five (35) feet . . . without a special permit from the board of appeals, after a finding by the board that . . . the proposed structure will not in any way detract from the visual character or quality of the adjacent buildings, the neighborhood or the town as a whole."

[16]As a condition of the requested zoning relief, the board required that the steeple be lighted only "no later than 11 p.m., (or at whatever earlier hour all other churches in Belmont turn off all exterior lights)."

[17]The judge also found that Martin established that the steeple will affect her "by casting a shadow" over her property, which would "substantially reduce" her enjoyment of her property sufficient to confer standing. We agree with the church that the evidence of shadow from the steeple was speculative and insufficient to confer standing.

lot area, setbacks, open space, and parking requirements. See note 3, *supra*. The amendment "seeks to strike a balance between preventing local discrimination against [a religious] use . . . and honoring legitimate municipal concerns that typically find expression in local zoning laws" (citation omitted). *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 757 (1993). Local zoning requirements are meant to be applied uniformly. Consequently, "local officials may not grant blanket exemptions from the requirements to protected uses." *Campbell* v. *City Council of Lynn*, 415 Mass. 772, 778 (1993). But they may decide that zoning requirements concerning height and dimension should not be applied to a proposed religious use where it would unreasonably impede the protected use without appreciably advancing critical municipal goals. See *Trustees of Tufts College* v. *Medford*, *supra* at 757-761.

The board made a careful examination of the case law interpreting the Dover Amendment. It concluded that the first issue to be considered was "whether the . . . structure is being used for a religious purpose." The board found that it "is clearly part of Mormon theology to reflect, in their buildings, the belief of an ascension towards heaven." The board found that members of the church believe that steeples, by pointing toward heaven, "serve the purpose of lifting Mormons' eyes and thoughts towards heaven." It concluded that the steeple served a religious purpose, and that application of the Belmont bylaw regulating the height of uninhabited projections would be an unreasonable regulation of a religious use.

Rejecting that analysis, the judge found that, "[w]hile a steeple may have inspirational value and may embody the Mormon value of ascendency towards heaven, that is not a matter of religious doctrine and is not in any way related to the religious use of the [t]emple." She then determined that, because "neither the presence nor the height of the steeple atop the [t]emple represents a necessary element of the Mormon religion," it does not "aid in the Mormons' system of faith" so as to be entitled to be analyzed pursuant to the Dover Amendment. In the alternative, the judge concluded that, even if the Dover Amendment were applicable, the church "failed to carry its burden of proof" that limiting the height of the

proposed steeple to eleven feet, two inches, is "unreasonable." She reached this conclusion because the church had not shown that "limiting the spire [height] would prevent or significantly impede the religious use" of the temple. The judge erred on both grounds.

## A

First, in deciding that the Dover Amendment was not applicable, the judge erroneously framed the question as "whether the construction of the spire atop the already existing [t]emple[18] constitutes the 'use of land or structures for religious purposes' so as to trigger a Dover Amendment analysis." The statute directs the inquiry to the use of "land" or a "structure," not the use of an element or part of a structure. See G. L. c. 40A, § 3, second par. ("No zoning ordinance or by-law shall . . . prohibit, regulate or restrict the use of land or structures for religious purposes"). See *Worcester County Christian Communications, Inc.* v. *Board of Appeals of Spencer*, 22 Mass. App. Ct. 83, 87 (1986) ("focus must be placed on the use of the structure"). To view each element, each section of a "structure," as requiring an independent "religious" use leads to impossible results: Is a church kitchen or a church parking lot a "religious" use? We have not formulated the test so narrowly. In *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 754-755 (1993), for example, we considered the applicability of the Dover Amendment to several construction projects proposed by an educational institution, including a multi-level parking garage. *Id.* We recognized that the proposed parking garage was for an educational purpose, because it "will be located in the core . . . area of Tufts' campus." *Id.* at 755. While the judge's inquiry may have focused on the steeple because the temple complied in all other respects with Belmont's zoning bylaws, the question under the statute is whether the structure as a

---

[18]Because the proposed temple complied in all other respect with Belmont's bylaws, in June, 1998, the church obtained a building permit and began construction of the temple, including an approximately eleven foot base for the proposed steeple. Construction of the temple was complete by the time of trial. ·

whole is to be used for religious purposes.[19] It clearly is, and just as clearly the Dover Amendment applies.

The judge also used an erroneous legal test to determine whether a "structure" serves a religious purpose, thereby entering an area of inquiry that the First Amendment to the United States Constitution prohibits. She correctly noted that " '[r]eligious purpose' means something in aid of a system of faith and worship," citing *Needham Pastoral Counseling Ctr., Inc.* v. *Board of Appeals of Needham*, 29 Mass. App. Ct. 31, 33 (1990). She then impermissibly concluded that a steeple is not "a necessary element of the Mormon religion."

It is not for judges to determine whether the inclusion of a particular architectural feature is "necessary" for a particular religion. A rose window at Notre Dame Cathedral, a balcony at St. Peter's Basilica—are judges to decide whether these architectural elements are "necessary" to the faith served by those buildings? The judge found, as she was compelled to do in the face of overwhelming and uncontradicted testimony, that temples "are the places where Mormons conduct their sacred ceremonies." No further inquiry as to the applicability of the Dover Amendment was warranted. See *Parish of the Advent* v. *Protestant Episcopal Diocese of Mass.*, 426 Mass. 268, 284-285 (1997) (civil tribunals must avoid resolving matters of purely ecclesiastical nature). See also *Employment Div., Dep't of Human Resources of Or.* v. *Smith*, 494 U.S. 872, 887 (1990), and cases cited ("[r]epeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim").

---

[19]Despite the fact that the size of the temple itself was not before her, the judge found that, although the church claimed that the temple could not accommodate its intended religious uses if it were any smaller, the portion of the interior temple space "devoted to the temple's purpose . . . is a relatively small percentage." She went on to note that "[r]ooms such as the audio-visual room, lunch room, dining room, storage, custodian/clothing drop, general office, showers, mechanical areas, multi-use, waiting and study rooms, arrival center, cold and dry storage rooms and locker rooms are purely for the convenience of [t]emple visitors [rather than] the practice of the Mormon religion . . . ." This is the sort of particularized inquiry into the use of discrete sections of a structure serving a protected religious use that is inappropriate.

434 Mass. 141 (2001)                                                151

Martin v. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints.

## B

As an alternative ground for denying relief, the judge determined that, even if the Dover Amendment applied, the church failed to prove that application of the Belmont bylaw to its temple was unreasonable. We described in *Trustees of Tufts College* v. *Medford*, 415 Mass. 753 (1993), and *Campbell* v. *City Council of Lynn*, 415 Mass. 772 (1993), the standards by which to analyze application of the Dover Amendment to exempt institutions. While the reasonableness of a local zoning requirement will depend on the particular facts of each case, we said that a judge should consider whether the requirement sought to be applied takes into account "the special characteristics of [the exempt] use," adding that a zoning requirement that results "in something less than nullification of a proposed [exempt] use may be unreasonable within the meaning of the Dover Amendment." *Trustees of Tufts College* v. *Medford, supra* at 758-759 & n.6. See *Campbell* v. *City Council of Lynn, supra* at 778.

The judge found that the church had not met its burden of proving that the height restriction was unreasonable because it had not shown "that limiting the spire to 12 [feet] would prevent or significantly impede the religious use of the [t]emple or substantially diminish or detract from its usefulness." By considering only whether the height restriction prevented or diminished the temple's religious "usefulness," the judge's focus was again too narrow. There are several ways in which an applicant may demonstrate "unreasonableness." See, e.g., *Trustees of Tufts College* v. *Medford, supra* at 759-760 (zoning requirement unreasonable if it detracts from usefulness of structure, imposes excessive costs on applicant, or impairs character of proposed structure). See also *Rogers* v. *Norfolk*, 432 Mass. 374, 385 (2000) ("proof of cost of compliance is only one way" to show unreasonableness, and court must consider other aspects such as use or character of property); *Campbell* v. *City Council of Lynn, supra* at 778 (same). The judge should have considered whether compliance with Belmont's height restrictions would have impaired the character of the temple, while taking into account the special characteristics of its exempt use.

The judge dismissed the church's desire to build a steeple as a "purely" aesthetic issue. But matters of aesthetic and architectural beauty are among the factors to be considered in deciding whether a zoning requirement "impairs the character" of a proposed exempt use. *Trustees of Tufts College* v. *Medford*, *supra* at 757, 759 & n.6. The "character" of the temple with its steeple surely encompasses both its architectural beauty, as well as its religious symbolism. See *Petrucci* v. *Board of Appeals of Westwood*, 45 Mass. App. Ct. 818, 826-827 (1998) (Dover Amendment precluded application of zoning ordinance that would "disturb the sense of the building's continuity" and ruin its "architectural integrity"). The record is replete with evidence that the steeple is integral to the specific character of the contemplated use. The church's architect based his design on an approved church prototype. There was uncontradicted testimony that the church values an ascendency of space for the religious ceremonies performed in temples. The architect designed the temple to have a steeple topped by a religious symbol, a statue of the Angel Moroni, because he considered the design of a well-proportioned steeple to be part of his assignment.[20] There was evidence that all but three of the church's numerous temples located in countries around the world have steeples.[21] The Mormon religion is hardly unique in this regard: churches have long built steeples to "express elevation toward the infinite, [their] spires soaring into the heavens." J. Sallis, Stone 63 (Ind. Univ. Press 1994), and a steeple is the precise architectural feature that most often makes the public identify the building as a religious structure. The judge found that, "[w]hile a spire may have inspirational value and may embody the Mormon value of ascendancy towards heaven, that is not a matter of religious doctrine . . . ." It is not permissible for a judge to determine what is or is not a matter of religious doctrine. See *Fortin* v.

[20]Because there was evidence that not all Mormon temples are topped by a figure of the Angel Moroni, the judge found the presence of the Angel Moroni "is not a matter of religious doctrine and is not in any way related to the religious use of the [t]emple." Catholic or Protestant religious services may be conducted in buildings that do not bear an exterior sign of a cross; that would not support a finding that a cross is "not in any way related to the religious use" of the building.

[21]At the time of trial, the church had 110 temples operating or under construction worldwide.

*Roman Catholic Bishop of Worcester*, 416 Mass. 781, 785 (1994). See also *Fowler* v. *Rhode Island*, 345 U.S. 67, 70 (1953) ("no business of courts to say . . . what is a religious practice or activity"). In any event, religious "doctrine" is not the defining test whether imposition of a zoning requirement will impair the character of a religious building.

The board found, and there was no evidence to the contrary, that no municipal concern was served by controlling the steeple height of churches. It concluded that the height exemption requested by the church was reasonable in light of the function of a steeple, and the importance of proportionality of steeple height to building height. Once it determined that the Dover Amendment was implicated, it was permissible for the board to consider whether something less than the original design of the steeple height was reasonable. It did so, and the church voluntarily amended its design to reduce the height of the steeple.[22] We agree with the board that a rigid application of Belmont's height restrictions for uninhabited "projections" would impair the character of the temple without advancing any municipal concern.

Because we conclude that the height restriction imposed on uninhabited "projections" under § 4.2.2 of the Belmont bylaws may not reasonably be imposed on the church because of the Dover Amendment, we need not address whether the judge impermissibly exceeded her authority in annulling the decision of the board to issue a special permit.[23] We also need not consider whether the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc (2000), prohibits the application of the Belmont height limitation to the church's

---

[22]In its initial application, the church proposed a temple that would be 94,100 square feet, fifty-eight feet high, with six steeples, the tallest of which would be 156 feet high. The church later submitted a revised plan that reduced the size of the proposed temple to 68,000 square feet, a height of fifty-six feet, and a single steeple of eighty-three feet.

[23]The board found that the "benefits [of the church's proposed steeple] outweigh the burdens," and concluded that the height of the steeple was reasonable "(a) as a Dover type regulation of height, (b) as a special permit matter or (c) a combination of the two."

proposed steeple. The judgment of the Superior Court is vacated. The case is remanded to the Superior Court. A new judgment is to be entered affirming the decision of the board of appeals of Belmont.

*So ordered.*